J-A17015-17

2018 PA Super 80

| | | |
|---|---|---|
| G & G INVESTORS, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| PHILLIPS SIMMONS REAL ESTATE | : | |
| HOLDINGS, LLC | : | |
| 1262 POINT BREEZE AVENUE | : | |
| PHILADELPHIA, PA  19146 | : | |
| OPA/BRT: 871167750 | : | |
| | : | |
| Appellee | : | No. 2732 EDA 2016 |

Appeal from the Order Entered July 18, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  February Term, 2016 No. 1599

BEFORE:   GANTMAN, P.J., RANSOM, J., and PLATT, J.*

OPINION BY GANTMAN, P.J.:                    **FILED APRIL 04, 2018**

Appellant, G & G Investors, LLC, appeals from the order entered in the Philadelphia County Court of Common Pleas, denying Appellant's petition for a conservator of real property owned by Appellee, Phillips Simmons Real Estate Holdings, LLC 1262 Point Breeze Avenue Philadelphia, PA 19146 OPA/BRT: 871167750.  We affirm.

The relevant facts and procedural history of this case are as follows. Appellee owns an unoccupied building in Philadelphia, Pennsylvania ("Property").  On February 10, 2016, Appellant filed a petition pursuant to the Abandoned and Blighted Property Conservatorship Act, 68 P.S. § 1101, *et seq.* ("Act 135"), seeking to be appointed conservator of the Property.

_____

*Retired Senior Judge assigned to the Superior Court.

The court dismissed Appellant's petition without prejudice for procedural defects on March 11, 2016. On March 17, 2016, Appellant filed an amended petition for appointment of conservator. The court issued an order on March 21, 2016, to show cause and scheduled a hearing on Appellant's amended petition. On April 19, 2016, Appellant filed a petition for authorization to inspect the Property's interior. Appellee filed an answer and new matter to the amended petition, and Appellant filed a reply to new matter.

On July 13, 2016, the court conducted a proceeding, at which both parties gave opening statements and presented testimony and other evidence, including photographs of the Property. The trial court opinion summarized the hearing as follows.

> [Appellant] first offered testimony from David Feldman who was qualified as an expert as a realtor licensed in Pennsylvania and as a licensed architect. Mr. Feldman testified that he inspected the exterior of the Property and found certain deficiencies such as the building's "brick work appears to be pulling away from the building" ([N.T. Hearing, 7/13/16, at] 21); the boarded second-floor window was installed improperly, resulting in "a very large opening for [both] birds to get in and rain" ([*Id.* at] 25); looking through the windows of the first floor he saw debris and mouse or rat droppings. ([*Id.* at] 26-27). Mr. Feldman later qualified his testimony, stating he was not certain that what he saw were animal droppings. ([*Id.* at] 41). The photos of the Property presented by [Appellant] and identified by Mr. Feldman did not reflect an exterior of an "abandoned and blighted" property.
>
> Lastly, Mr. Feldman testified that the condition of the Property has a negative effect on neighbors. By his own admission, Mr. Feldman drew his conclusion based on "generalities" and did not speak to any neighbors on the block or the surrounding area. ([*Id.* at] 31). He did not

testify as to the specific effect the alleged conditions of this Property had on the surrounding neighborhood, such as reduction in value, or inability to obtain insurance.

[Appellant]'s second witness was Mariano Mattei. Mr. Mattei's father owns [real property] located next to and abutting the Property at issue. His property is being renovated for use as a pizza shop but was not in operation as of the hearing. Mr. Mattei testified that [he] believed his property sustained water damage due to the conditions of the Property in question. However, when asked "what facts do you have to establish that the water you're testifying to today comes from [the Property]", Mr. Mattei admitted, "I have no facts." ([*Id.* at] 56). …

[Appellant]'s third witness was Anthony Gioielli, co-owner of [Appellant]. Mr. Gioielli testified that he'd seen the back door to the Property unsecured. ([*Id.* at] 62). Although Mr. Gioielli identified a photo of the back door which appeared to be open[1], Mr. Mattei stated he never saw the back door open as it was in the photo. ([*Id.* at] 53). [Mr. Gioielli] further testified that he had seen people throw trash into the gated front entrance ([*Id.* at] 63), however none of the photos offered into evidence by [Appellant] reflected trash in the area in question. The front of the Property appeared secured with gates covering large glass display windows. Th[e Property] appeared to be a corner commercial [p]roperty with glass display windows on both sides of the corner front entrance. Finally, Mr. Gioielli admitted that he had approached [Appellee] prior to filing this action and offered to buy the Property. ([*Id.* at] 68). Mr. Gioielli testified that he owned properties in [the] area, he was an investor that "flipped" properties and that this Property had affected his investment properties. He was not specific as to how these properties were affected.

[1] Exhibit P-1H shows the back door to the Property open. The integrity of the door is not compromised, and there appears to be a lock-box attached to the doorknob. There is no indication from the photo that the Property is subject to unauthorized entry.

[Appellee]'s first witness was Lionel Simmons, co-owner of [Appellee]. Mr. Simmons testified that [in] 2009 he

obtained a permit from the City of Philadelphia to make repairs on the Property and started work on new stairs, and repair and replacements of joists. ([*Id.* at] 76). He admitted that at some point he stopped work due [to] a legal dispute that arose with a co-owner which could have clouded the title. Mr. Simmons testified that currently the Property is "gutted out", with the electric and plumbing removed. ([*Id.* at] 77). [Appellee] introduced photographs of the interior to show the status of the Property renovations and were consistent with [Mr. Simmons'] description that the Property had been "gutted out." …

[Appellee]'s second witness was Christopher Sample, chief of staff to District Councilmember Kenyatta Johnson. Mr. Sample confirmed that the Councilman's office had not received any complaints about the Property, which is located in his district.

At the conclusion of testimony, [Appellee] moved to dismiss the action due to [Appellant]'s failure to satisfy the requirements of [Section] 1105 of [Act 135]. [Appellant] requested that the court first allow an interior inspection of the Property pursuant to [its] Petition to Inspect. The court denied [Appellant]'s request and granted [Appellee]'s oral [m]otion to dismiss or deny the [p]etition.

(Trial Court Opinion, filed December 28, 2016, at 2-4, unpaginated).

On July 14, 2016, the court issued an order denying Appellant's amended petition, with notice to the parties on July 18, 2016. Appellant filed no post-trial motion. Appellant did file a timely notice of appeal on August 17, 2016. The court ordered Appellant on August 19, 2016, to file a concise statement of errors complained of appeal per Pa.R.A.P. 1925(b); Appellant timely complied on September 9, 2016.

Appellant raises three issues for our review.

[WHETHER] THE TRIAL COURT ERRED AS A MATTER OF

- 4 -

LAW BY DENYING APPELLANT'S PETITION FOR PROPERTY INSPECTION BECAUSE THE PETITION AND BRIEF CLEARLY STATED THAT THE DISCOVERY REQUESTED WAS NECESSARY FOR A DETERMINATION OF THE PENDING PETITION ACTION PURSUANT TO 68 P.S. [§] 1101 *ET SEQ.*, [APPELLEE] AVERRED THAT REHABILITATION HAS TAKEN PLACE DURING THE PREVIOUS 12 MONTHS AND THAT THERE WERE NO VERMIN OR DEBRIS IN THE PREMISES AND AFTER HEARING IT DETERMINED THAT TWO OF THREE REQUIRED CRITERIA WERE MET[?]

[WHETHER] THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S PETITION FOR PROPERTY INSPECTION BECAUSE THE PETITION AND BRIEF CLEARLY STATED THAT THE DISCOVERY REQUESTED WAS NECESSARY FOR A DETERMINATION OF THE PENDING PETITION ACTION PURSUANT TO 68 P.S. [§] 1101, *ET SEQ.*, [APPELLEE] AVERRED THAT REHABILITATION HAS TAKEN PLACE DURING THE PREVIOUS 12 MONTHS AND THAT THERE WERE NO VERMIN OR DEBRIS IN THE PREMISES AND AFTER HEARING IT DETERMINED THAT TWO OF THE THREE CRITERIA WERE MET[?]

[WHETHER] THE TRIAL COURT ERRED IN THAT ITS ORDER WAS CONTRARY TO THE WEIGHT OF THE EVIDENCE AVERRED IN THE PETITION FOR CONSERVATORSHIP PURSUANT TO 68 P.S. [§] 1101, *ET SEQ.*, SUBSEQUENT FILINGS AND AT THE HEARING HELD BY THE COURT BECAUSE THE PREMISES MET THE CRITERIA OF 68 P.S. [§] 1105(D)(5) AS [APPELLANT] PRESENTED EVIDENCE THAT THE PREMISES MET AT LEAST THREE OF THE [BLIGHT] CRITERIA [UNDER 68 P.S. [§]1105(D)(5)?]

(Appellant's Brief at 8-9) (internal footnote omitted).

As a prefatory matter, we must determine whether Appellant properly preserved its issues for review. **See Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa.Super. 2007), *aff'd*, 602 Pa. 147, 977 A.2d 1170 (2009) (citing **Commonwealth v. Wholaver**, 588 Pa. 218, 903 A.2d 1178 (2006), *cert. denied*, 549 U.S. 1171, 127 S.Ct. 1131, 166 L.Ed.2d 900 (2007)) (stating:

"This Court may *sua sponte* determine whether issues have been properly preserved for appeal"); **Hall v. Owens Corning Fiberglass Corp.**, 779 A.2d 1167, 1169 (Pa.Super. 2001) (stating: "[P]ost-trial relief may not be granted unless the grounds for such relief are specified in the post-trial motion. Grounds not specified in the post-trial motion are deemed waived") (internal citations omitted); **Borough of Harveys Lake v. Heck**, 719 A.2d 378, 380 (Pa.Cmwlth. 1998) (stating party's failure to file post-verdict motions constitutes waiver of all issues on appeal; whether appellant has preserved any issue for appeal can be raised *sua sponte* by reviewing court).

The Pennsylvania Rules of Civil Procedure set out the requirements for post-trial relief and state in pertinent part:

> **Rule 227.1. Post-Trial Relief**
>
>          \*     \*     \*
>
> (c)   Post Trial motions shall be filed within ten days after
>
> > (1)   verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or
> >
> > (2)   notice of nonsuit or the filing of the decision in the case of a trial without a jury.
>
> If a party has filed a timely post-trial motion, any other party may file a post-trial motion within ten days after the filing of the first post-trial motion.
>
> > *Note*: A motion for post-trial relief may be filed following a trial by jury or a trial by a judge without a jury pursuant to Rule 1038. **A motion for post-trial relief may not be filed to orders disposing**

> **of…other proceedings which do not constitute a trial**. *See U.S. National Bank in Johnstown v. Johnson*, 506 Pa. 622, 487 A.2d 809 (1985).
>
> A motion for post-trial relief may not be filed to matters governed exclusively by the rules of petition practice.
>
> \* \* \*

Pa.R.C.P. 227.1(c)(1)-(2) and *Note* (emphasis added). Generally, following a trial, an appellant must file post-trial motions to preserve issues for appellate review; issues not raised in post-trial motions are waived. *Chalkey v. Roush*, 757 A.2d 972, 975 (Pa.Super. 2000) (*en banc*), *aff'd*, 569 Pa. 462, 805 A.2d 491 (2002). Our Supreme Court has held "that pursuant to Rule 227.1…, parties are required to file post-trial motions from a trial court's order following a trial in both actions at law and in equity in order to properly preserve issues that they wish to raise on appeal…." *Chalkey v. Roush*, 569 Pa. 462, 463-64, 805 A.2d 491, 492 (2002).

Parties to a proceeding that does not amount to a trial, however, need not file post-trial motions to preserve issues for appeal. Pa.R.C.P. 227.1(c)(1)-(2) and *Note*. Pennsylvania courts look to the substance of an action, rather than the form of a petitioner's initial pleading, to determine whether an action falls within the scope of Rule 227.1. *Motorists Mut. Ins. Co. v. Pinkerton*, 574 Pa. 333, 343 n. 6, 830 A.2d 958, 964 n. 6 (2003) (applying Rule 227.1 to action petitioner initiated through "Petition for Declaratory Judgment," where case did not proceed under "rules of petition practice"; explaining substance of action, not label petitioner gives initial

pleading, dictates whether Rule 227.1 applies).

To determine whether an appellant must file post-trial motions following an in-court proceeding, we consider whether, under the circumstances of the action: (i) the plain language of Rule 227.1 makes clear a post-trial motion is necessary; (ii) case law provides a post-trial motion is necessary, even if Rule 227.1 is silent on the subject; and (iii) practicing attorneys would reasonably expect a post-trial motion to be necessary. ***Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets***, 617 Pa. 265, 289-90, 52 A.3d 1233, 1248 (2012). Case law requires a post-trial motion following a proceeding, where the court heard new testimony and received new evidence, which the court relied upon when it issued its decision. ***See id.*** at 294-95, 52 A.3d at 1251 (stating: "a…proceeding…that relies on an existing record is not a trial…."); ***Vautar v. First Nat. Bank of Pennsylvania***, 133 A.3d 6, 11-12 (Pa.Super. 2016) (providing where parties took no new testimony and introduced no evidence and court issued verdict based solely on evaluation of existing record, proceedings did not amount to trial and post-trial motions were unnecessary); ***City of Philadelphia v. New Life Evangelistic Church***, 114 A.3d 472, 478 (Pa.Cmwlth. 2015) (discussing ***Newman, supra*** and stating: "[T]he Supreme Court…signaled that a hearing that bears the hallmarks of a trial by requiring or admitting, or…**offering a party the opportunity to present additional evidence**, does constitute a 'trial' for

the purposes of [Rule] 227.1") (emphasis in original).

Instantly, Appellant initiated this case by filing a petition for appointment of a conservator pursuant to Act 135. The trial court conducted a hearing on Appellant's petition, during which the parties offered exhibits into evidence and collectively examined and cross-examined five witnesses. The parties introduced evidence and elicited witness testimony for the first time at the hearing. Although Rule 227.1 is silent concerning post-trial motions following an Act 135 hearing, the record establishes the court relied upon the July 13, 2016 hearing testimony and documentary evidence when it denied Appellant relief. *See Newman, supra*; Pa.R.A.P. 227.1(c). Therefore, case law makes clear, and practicing attorneys would reasonably expect, post-trial motions were necessary following the July 13, 2016 hearing. *See Newman, supra*; *Vautar, supra*. Thus, the hearing on Appellant's petition constituted a trial for purposes of Rule 227.1. *See Newman, supra*; *Vautar, supra*; Pa.R.A.P. 227.1(c). After the court denied Appellant's petition, however, Appellant filed a timely notice of appeal but failed to file any post-trial motion. Accordingly, Appellant waived its issues on appeal. *See id.*

Moreover, even if properly preserved, Appellant's issues on appeal would not warrant relief. The relevant standard of review is as follows:

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must

grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the fact[-]finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Agostinelli v. Edwards*, 98 A.3d 695, 704 (Pa.Super. 2014), *appeal denied*, 631 Pa. 734, 113 A.3d 278 (2014) (internal citations omitted).

Act 135 provides, in relevant part, as follows:

**§ 1105. Appointment of conservator**

**(a) General rule.**—The court shall act upon a petition submitted by holding a hearing within 60 days of receipt of the petition and by rendering a decision no later than 30 days after completion of the hearing.

\* \* \*

**(b) Hearing.**—At the hearing, any party in interest shall be permitted to present evidence to support or contest the petition, including, but not limited to, the schedule of encumbrances.

**(c) Conditions for conservatorship.**—If a petition is filed under [this statute], the court may appoint a conservator if all of the following apply as of the date of filing:

(1) The building has not been legally occupied for at least the previous 12 months.

(2) The owner fails to present compelling evidence

- 10 -

that he has actively marketed the property during the preceding 60-day period and made a good faith effort to sell the property at a price which reflects the circumstances and market conditions.

(3) The property is not subject to a pending foreclosure action by an individual or nongovernmental entity.

(4) The current owner fails to present sufficient evidence that he has acquired the property within the preceding six months. The evidence shall not include instances where the prior owner is a member of the immediate family of the current owner, unless the transfer of title results from the death of the prior owner, or where the current or prior owner is a corporation, partnership or other entity in which either owner or the immediate family of either owner has an interest in excess of 5%.

(5) The court finds at least three of the following:

(i) The building or physical structure is a public nuisance.

(ii) The building is in need of substantial rehabilitation and no rehabilitation has taken place during the previous 12 months.

(iii) The building is unfit for human habitation, occupancy or use.

(iv) The condition and vacancy of the building materially increase the risk of fire to the building and to adjacent properties.

(v) The building is subject to unauthorized entry leading to potential health and safety hazards and one of the following applies:

(A) The owner has failed to take reasonable and necessary measures to secure the building.

(B) The municipality has secured the building in

order to prevent such hazards after the owner has failed to do so.

(vi) The property is an attractive nuisance to children, including, but not limited to, the presence of abandoned wells, shafts, basements, excavations and unsafe structures.

(vii) The presence of vermin or the accumulation of debris, uncut vegetation or physical deterioration of the structure or grounds has created potential health and safety hazards and the owner has failed to take reasonable and necessary measures to remove the hazards.

(viii) The dilapidated appearance or other condition of the building negatively affects the economic well-being of residents and businesses in close proximity to the building, including decreases in property value and loss of business, and the owner has failed to take reasonable and necessary measures to remedy appearance or the condition.

(ix) The property is an attractive nuisance for illicit purposes, including prostitution, drug use and vagrancy.

\* \* \*

68 P.S. § 1105(a), (c), (d).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Idee C. Fox, we conclude Appellant's issues would merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed December 28, 2016, at 5-9, unpaginated) (finding: **(1-2)** Act 135 contains no provision allowing property inspection and discovery; Act 135 requires court to schedule

hearing within sixty days of filing of petition; short period between filing of petition and hearing precludes prolonged discovery; further, mere filing of Act 135 petition does not permit petitioner to access another's property without presenting testimony and/or evidence of blight and abandonment; Appellant failed to meet its burden to prove Property is blighted and abandoned under Section 1105(d) of Act 135; if court determined Appellant had established Property were "abandoned and blighted" under Act 135, then court could allow inspection by conservator to prepare and submit conservatorship plan; **(3)** Appellant failed to establish minimum of three blight conditions under Section 1105(d)(5) of Act 135; evidence demonstrated Property is secured, gutted-out building, with one improperly boarded window, and requires substantial rehabilitation; Property also is unfit for human habitation, occupancy, or use, because it has no electrical or water service; Appellant failed to establish, however, that Property presents "potential health and safety hazard"; speculative evidence of debris and possible vermin did not demonstrate health and safety hazard; no evidence showed how debris at doorway affects health or safety of neighbors, and Appellant presented insufficient evidence of vermin; Appellant also failed to prove dilapidated appearance or condition of Property negatively affects economic well-being of residents and businesses near Property; Appellant presented no testimony from neighbors as to effect of Property, and Appellee produced evidence that no neighbor had complained to city

councilman about Property).  The record supports the trial court's rationale, and we would have no need to disturb it.  Accordingly, even if Appellant had properly preserved its issues on appeal, we would affirm on the basis of the trial court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/18

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| **G & G INVESTORS, LLC** | : | **FEBRUARY TERM, 2016** |
| | : | |
| **v.** | : | **NO. 1599** |
| | : | |
| **PHILLIPS SIMMONS REAL ESTATE HOLDINGS, LLC** | : | **SUPERIOR COURT 2732 EDA 2016** |
| | : | |

## OPINION

Petitioner G & G Investors, LLC appeals this court's Order of July 14, 2016, which denied its Petition for the Appointment of an Act 135 Conservator.

## FACTUAL AND PROCEDURAL HISTORY

Petitioner, G & G Investors, LLC, filed a Petition for the Appointment of a Conservator pursuant to the Abandoned and Blighted Property Conservatorship Act, 68 P.S. §1101 et seq. ("Act 135"). Petitioner sought appointment as Conservator of property located 1262 Point Breeze Avenue in Philadelphia ("Property"). The named owner of the Property is Phillips Simmons Real Estate Holdings, LLC ("Respondent").

After Respondent was served, Petitioner filed a Motion to inspect the Property prior to the scheduled hearing. Petitioner stated in Motion that "[t]his Honorable Court has authority to grant Petitioner the right to enter the premises for property inspection pursuant to Pa.C.R.P. 4009.31...... As the elements of Petitioner's proofs include

G & G Investors, Llc Vs Phillips Simmons Rea-OPFLD



16020159900046

OPIES SENT PURSUANT TO Pa.R.C.P. 236(b)  12/29/2016

elements on the interior of the premises, Petitioner respectfully requests this Honorable Court grant a property inspection." This court finding that any such inspection should not be allowed until after a hearing and Petitioner's has established, through testimony and/or evidence, that the Property qualifies for relief under Act 135, deferred its decision until the scheduled hearing.

This court conducted a hearing on the Petition. Petitioner first offered testimony from David Feldman who was qualified as an expert as a realtor licensed in Pennsylvania and as a licensed architect. Mr. Feldman testified that he inspected the exterior of the Property and found certain deficiencies such as the building's "brick work appears to be pulling away from the building" (NT p. 21); the boarded second-floor window was installed improperly, resulting in "a very large opening for birds to get in and rain" (NT p. 25); looking through the windows of the first floor he saw debris and mouse or rat droppings"( NT p. 26 – 27). Mr. Feldman later qualified his testimony, stating he was not certain that what he saw were animal droppings (NT p. 41). The photos of the Property presented by Petitioner and identified by Mr. Feldman did not reflect an exterior of an "abandoned and blighted" property.

Lastly, Mr. Feldman testified that the condition of the Property has a negative effect on neighbors. By his own admission, Mr. Feldman drew his conclusion based on "generalities" and did not speak to any neighbors on the block or the surrounding area (NT p. 31). He did not testify as to the specific effect the alleged conditions of this Property had on the surrounding neighborhood, such as a reduction in value, or inability to obtain insurance.

Petitioner's second witness was Mariano Mattei. Mr. Mattei's father owns 1262 Point Breeze Avenue, located next to and abutting the Property at issue. His property is being renovated for use as a pizza shop but was not in operation as of the hearing. Mr. Mattei testified that believed his property sustained water damage due to the conditions of the Property in question. However, when asked "what facts do you have to establish that the water you're testifying to today comes from [the Property]", Mr. Mattei admitted, "I have no facts." (NT p. 56) Accordingly, the court found him not credible.

Petitioner's third witness was Anthony Gioielli, co-owner of Petitioner G & G Investments. Mr. Gioielli testified that he'd seen the back door to the Property unsecured (NT p. 62). Although Mr. Gioielli identified a photo of the back door which appeared to be open[1] , Mr. Mattei stated he never saw the back door open as it was in the photo.(NT p. 53). He further testified that he had seen people throw trash into the gated front entrance (NT p. 63), however none of the photos offered into evidence by Petitioner reflected trash in the area in question. The front of the Property appeared secured with gates covering large glass display windows. This appeared to be a corner commercial Property with glass display windows on both sides of the corner front entrance. Finally, Mr. Gioielli admitted that he had approached the Property owner prior to filing of this action and offered to buy the Property ( NT p. 68). Mr. Gioielli testified that he owned properties in area, he was an investor that "flipped" properties and that this Property had affected his investment properties. He was not specific as to how these properties were affected.

---

[1] Exhibit P-1H shows the back door to the Property open. The integrity of the door is not compromised, and there appears to be a lock-box attached to the doorknob. There is no indication from the photo that the Property is subject to unauthorized entry.

Respondent's first witness was Lionel Simmons, co-owner of Respondent Phillips Simmons Real Estate. Mr. Simmons testified that 2009 he obtained a permit from the City of Philadelphia to make repairs on the Property and started work on new stairs, and repair and replacements of joists (NT p. 76). He admitted that at some point he stopped work due a legal dispute that arose with a co-owner which could have clouded the title. Mr. Simmons testified that currently the Property is "gutted out", with the electric and plumbing removed (NT p. 77). Respondent introduced photographs of the interior to show the status of the Property renovations and were consistent with his description that the Property had been "gutted out." This court found Mr. Simmons credible.

Respondent's second witness was Christopher Sample, chief of staff to District Councilmember Kenyatta Johnson. Mr. Sample confirmed that the Councilman's office had not received any complaints about the Property, which is located in his district.

At the conclusion of testimony, Respondent moved to dismiss the action due to Petitioner's failure to satisfy the requirements of §1105 of Act 135. Petitioner requested that the court first allow an interior inspection of the Property pursuant to their Petition to Inspect. The court denied Petitioner's request and granted Respondent's oral Motion to dismiss or deny the Petition. This appeal followed.

## DISCUSSION

In response to this court's Order, Petitioner filed a 1925(b) Statement of Matters Complained of on Appeal. Petitioner raises three issues, which the court will address below.

## I.    **Petition to Inspect**

The first two issues raised on appeal relate this court's denial of Petitioner's Motion to inspect the interior of the Property. Petitioner contends that the court (1) erred as a matter of law; and (2) abused its discretion by denying the Petition to Inspect "because the [Act 135] Petition and Brief clearly stated that the discovery requested was necessary for a determination of the pending Petition action pursuant to 68 P.S. 1101 *et seq.*" Petitioner also contends that since Respondent averred that rehabilitation has taken place during the previous twelve months, Petitioner should have opportunity to view the premises and assess the work. This court disagrees.

Act 135 contains no explicit provision for a property inspection, and the terms "inspection" or "inspect" do not appear in the statute. Act 135 also does not include any provision which would allow discovery. In fact the Act requires the Court to schedule a prompt hearing, and requires a hearing within sixty days of filing. 68 P.S. §1105(a). This short time frame precludes prolonged discovery periods. The importance of prompt resolution may also be gleaned from the Legislature's 2014 amendment to Act 135, which shortened the time period under §1105(a) from 120 days to 60 days. *See* 2014, Oct. 22, P.L. 2557, No. 157. Clearly the Legislature found that actions to remediate blighted and abandoned buildings, many of which are imminently dangerous to neighbors, should be resolved quickly. Related to this issue is the requirement that a *lis pendens* be filed against the property when the Act 135 petition is filed. *See* §1104(c). *Lis pendens* is notice to the world that a cloud exist over the

title to a property. *Janus Mgmt. Servs., Inc. v. Schlessinger*, 2002 Pa. Super 312, 810 A.2d 637, 642 (Pa.Super. 2002). This cloud is a significant encumbrance upon the owner as it may prevent, *inter alia*, the sale of the property to a responsible purchaser. The *lis pendens* may also prevent an owner from borrowing the funds necessary to repair a property. Repair of the property by the owner, or sale of the property to a buyer who would make repairs is a more efficient means of transformation than court-supervised conservatorship. Accordingly, this court finds that a prompt determination of whether a conservator should be appointed, and whether the *lis pendens* should be lifted, is in accordance with the purpose of Act 135.

Petitioner begins its case by requesting an inspection. As Petitioner fails to meet the burden as set forth in 68 P.S. §1105(d), it demands an interior inspection to prove its claim that the Property is "abandoned and blighted" as defined by Act 135. Petition contends that the mere filing of a Petition should allow it immediate access to another's property, without any threshold, and without presenting testimony and/or evidence of the conditions required under Act 135. If the only reason for this court's dismissal of the Petition was based solely on Respondent's statement that renovations had been made on the Property over the proceeding twelve months and such work was not apparent, then the court may have properly continued the matter to allow an inspection. However, that is not the case here.

In addition, if the court had found Petitioner had established the conditions required under the Act to find the Property "abandoned and blighted", it reasonably could allow an inspection by Conservator to prepare and submit a plan.

For these reasons, the court's denial of the Petition to Inspect was correct as a matter of law. Further, the court did not abuse its discretion. As discussed below, Petitioner failed to present sufficient evidence to allow this court to find that this Property met the conditions as required under §1105(d).

## II.    Act 135 Petition

Petitioner's third issue on appeal contends that the trial court erred in that "the decision to deny the Act 135 Petition was contrary to the weight of the evidence averred in the Act 135 Petition, subsequent filings and evidence presented at the hearing because the Property met the criteria of §1105 of Act 135." This court disagrees.

Based upon the evidence presented at the hearing, Petitioner failed to satisfy its burden to establish the conditions set forth in §1105(d). The Petitioner established the conditions set forth in §1105(d)(1)-(4). However, §1105(d) requires Petitioner to prove three of the nine criteria required by §1105(d)(5).

The testimony of Mr. Feldman, and the other witnesses offered by Petitioner, the photos admitted into evidence, and the testimony of Mr. Simmons established that the Property is a secured, gutted-out building with one window that was boarded up improperly. Accordingly, the court finds that the Property is "in need of substantial rehabilitation" and because there is so electrical or water service to the Property it is "unfit for human habitation, occupancy of use" pursuant to §1105(d)(5)(ii) and (iii). However, Petitioner did not establish a third criteria as required. Petitioner did not

present credible and/or sufficient evidence that the Property: is a public nuisance[2]; the condition and vacancy of the building materially increases the risk of fire[3]; is subject to unauthorized entry leading to potential health and safety hazards[4]; is an attractive nuisance to children[5]; or is an attractive nuisance for illicit purposes[6]. With regard to the remaining two criteria, Petitioner failed to meet its burden of proof.

Petitioner provided evidence of debris and possible vermin, but not to the degree that it creates a "potential health and safety hazard" pursuant to §1105(d)(vii). The testimony established that there is minimal debris in the gated doorway to the Property. There was no evidence provided to show how this affects the health or safety of neighbors. There was also insufficient evidence of vermin, as Mr. Feldman admitted that he was not certain in his observation of mouse droppings.

Additionally, Petitioner failed to prove that "the dilapidated appearance or other condition of the building negatively affects the economic well-being of residents and businesses in close proximity to the building" pursuant to §1105(d)(viii). On this issue, the sole evidence offered by Petitioner was the expert opinion of David Feldman. Mr. Feldman admitted that his conclusions were based on generalities, while the language of the subsection is specific to "residents and business in close proximity to the building." Petitioner offered no testimony from neighbors as to the effect of this Property. Respondent, on the other hand, produced evidence that no neighbor has ever complained to their Councilman regarding the Property. Accordingly, the court

---

[2] §1105(d)(5)(ii)
[3] §1105(d)(5)(iv)
[4] §1105(d)(5)(v)
[5] §1105(d)(5)(vi)
[6] §1105(d)(5)(ix)

finds that Petitioner failed to prove that three of the nine criteria of §1105(d)(5) were met.

For the above mentioned reasons, this court's decision should be affirmed.

BY THE COURT:

_____

IDEE C. FOX, J.

Date: 12/23/16