2024 PA Super 111

| | | |
|---|---|---|
| NORTH SIDE LLC | : | IN THE SUPERIOR |
| | : | COURT OF |
| Appellant | : | |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| O'NEILL MAINTENANCE | : | |
| _____ | : | |
| SCHENLEY CAPITAL PARTNERS, LLC | : | No. 269 WDA 2023 |
| v. | : | |
| | : | |
| | : | |
| O'NEILL MAINTENANCE | : | |
| v. | : | |
| | : | |
| | : | |
| TOP CHOICE REAL ESTATE | : | |

Appeal from the Order Entered January 23, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-21-003444

| | | |
|---|---|---|
| NORTH SIDE LLC | : | IN THE SUPERIOR |
| | : | COURT OF |
| | : | |
| v. | : | PENNSYLVANIA |
| | : | |
| | : | |
| O'NEILL MAINTENANCE | : | |
| _____ | : | |
| SCHENLEY CAPITAL PARTNERS, LLC | : | |
| | : | |
| Appellant | : | No. 348 WDA 2023 |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |

O'NEILL MAINTENANCE         :
:
:
:
   v.                :
:
:
:
TOP CHOICE REAL ESTATE     :

Appeal from the Order Dated January 23, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-21-003444,
GD-22-008535

BEFORE: DUBOW, J., MURRAY, J., and SULLIVAN, J.

OPINION BY DUBOW, J.:        **FILED: May 31, 2024**

Appellant North Side LLC and Appellant Schenley Capital Partners, LLC separately appeal from the January 23, 2023 order entered by the Allegheny County Court of Common Pleas, which granted conditional relief to Appellee Top Choice Real Estate pursuant to Pennsylvania's Abandoned and Blighted Property Conservatorship Act, 68 P.S. 1101-1120 ("Act"). Upon careful review, we consolidate these appeals, affirm the order in part, vacate it in part, and remand for further proceedings.

This litigation involves 505-507 East Ohio Street in Pittsburgh ("the Property"). On April 6, 2021, North Side petitioned to declare the Property abandoned and blighted under the Act and to be appointed conservator for the property. On July 7, 2022, Schenley Capital filed a separate petition asking the court to declare it conservator for the property.

At the time Appellants filed their separate petitions, O'Neill Maintenance held title to the Property. On August 26, 2022, O'Neill Maintenance entered

into an agreement to sell the Property to Top Choice. Subsequently, the trial court consolidated the proceedings on the two petitions and allowed Top Choice to intervene.

On January 19, 2023, the court held an evidentiary hearing to address the various claims, including whether North Side had standing under the Act to file a conservatorship petition. Specifically, Schenley Capital and Top Choice questioned whether North Side met the Act's geographic proximity requirement that it be "within 2,000 feet" of the Property and introduced Google Maps evidence in support of their claim.[1] On the same day as the hearing, Schenley Capital filed a motion to dismiss North Side for failure to satisfy the 2,000-foot requirement, which Top Choice subsequently joined.

On January 23, 2023, the trial court entered an order holding as follows: (1) denying the motion to dismiss North Side; (2) concluding that the Property had met the conditions for conservatorship under the Act because it was abandoned and blighted; (3) granting Top Choice conditional relief under the Act to abate the "violations[,] nuisance[,] or emergency conditions within 18 months[;]" (4) ordering Top Choice to "post a bond in the amount of $161,700 as a condition of retaining possession of the Property;" (5) finding that petitioners incurred $2,193.55 in preparing the petitions and that the conservator's or developer's fee was $67,000, for a total of $69,193.55; (6) ordering that, upon transfer of the property to Top Choice, $69,193.55 of the

---

[1] 68 P.S. §§ 1103 (defining "party in interest"), 1104(a)(permitting a "party in interest" to file conservatorship petitions).

seller's proceeds be held in escrow; (7) holding that if the stated amount was paid into escrow, then Top Choice could take the Property "free of any lien or claim under the [the Act]" or the current proceedings; and (8) stating that if North Side and Schenley Capital could agree on how to divide the amount in escrow, the parties should submit a consent order or inform the court "in 20 days if an agreement has not been reached[.]" Order, 1/23/23, 1-3.

On the same day, North Side responded to the dismissal motions, claiming that it was located within 2,000 feet of the Property.[2] North Side additionally sought to disqualify Schenley Capital's counsel and strike its petition.

On February 7, 2023, the trial court denied North Side's petition to disqualify Schenley Capital's counsel. On February 14, 2023, the court scheduled a hearing for April 11, 2023, to determine the division of the $69,193.55 in escrow. However, the trial court postponed that hearing after North Side filed its notice of appeal to this Court on February 21, 2023, and

_____

[2] In its reply, North Side contested the use of Google Maps and argued instead for the use of a geodesic distance calculator which measured the straight-line distance between North Side and the Property as 1,724 feet. [North Side's] Reply to [Schenley Capital's and Top Choice's] Motion to Dismiss and [North Side's] Motion to Disqualify Counsel and Strike Petition of [Schenley Capital], 1/23/22, at ¶¶ 9-10.

Schenley Capital filed its notice of appeal on March 6, 2023.[3] Appellants and

the court complied with Pa.R.A.P. 1925.

Schenley Capital raises the following issues on appeal at 348 WDA 2023:

[1.] Whether the trial court erred by finding that North Side LLC, a private business entity, was a "Party in Interest" under [the Act] despite objective evidence—including multiple Google Maps entered into the record at the January 19, 2023 evidentiary hearing—as well as an admission under oath by North Side LLC's representative that North Side LLC is located more than 2,000 feet from the property at issue in the instant conservatorship action.

[2.] Whether the trial court erred by denying Schenley Capital Partners, LLC's Motion to Dismiss filed on January 19, 2023, which requested that the trial court dismiss North Side LLC for a failure to demonstrate that it was a "Party in Interest" and establish standing under [the Act] to bring its conservatorship action[?]

Schenley Capital's Appellant Br. at 11-12.

North Side raises the following issues on appeal at 269 WDA 2023:

1. Whether [the c]ourt erred in overruling an objection raised by [North Side] concerning the legal authority of the purported owner's representative to sell the [s]ubject [m]atter [p]roperty on behalf of O'Neill Maintenance to a third-party buyer[?]

2. Whether the [c]ourt erred and abused its discretion by refusing to disqualify the [c]ounsel for Schenley Capital Partners based on admissions and evidence submitted to the [c]ourt by Schenley Capital Partners and further outlined in the Motion to Disqualify the [c]ounsel for Schenley Capital Partners[?]

_____

[3] This Court initially consolidated the appeals, designating North Side's appeal as the lead docket. Based on North Side's failure to file its brief, this Court dismissed North Side's appeal and unconsolidated the cases. We, subsequently, reinstated North Side's appeal, listed the cases consecutively, but did not reconsolidate given the status of the briefing schedule. Following completion of briefing and in light of the overlapping issues, we direct the Prothonotary to reconsolidate these cases.

North Side's Appellant Br. at 5.

**A.**

Before addressing the merits of Appellants' claims, we first consider whether Appellants waived their issues by failing to file post-trial motions.[4] Pennsylvania's Rules of Civil Procedure require parties seeking to appeal to file post-trial motions "within ten days after . . . the filing of the decision in the case of a trial without jury." Pa.R.Civ.P. 227.1(c)(2).

This Court previously held that "post-trial motions were necessary following" a conservatorship hearing under the Act, finding that "the hearing on [the conservatorship] petition constituted a trial for purposes of Rule 227.1." *G & G Inv'rs., LLC v. Phillips Simmons Real Est. Holdings, LLC*, 183 A.3d 472, 477 (Pa. Super. 2018); *see also Scioli Turco, Inc. v. Prioleau*, 207 A.3d 346, 349 n.2 (Pa. Super. 2019) (citing *G & G Inv'rs., LLC* for the proposition that "motions for post-trial relief filed pursuant to Pa.R.C[iv].P. 227.1 are required to preserve issues on appeal following a hearing on a petition under the Act").

The Supreme Court, however, provided more recent guidance regarding when post-trial motions are required in non-jury matters in *Wolk v. School*

---

[4] On May 12, 2023, this Court issued a Rule to Show Cause why the case should not be dismissed given Appellants' failure to file post-trial motions, citing *G & G Investors, LLC v. Phillips Simmons Real Estate Holdings, LLC*, 183 A.3d 472, 476 (Pa. Super. 2018). Following the parties' responses, this Court discharged the Rule and allowed the appeal to proceed, acknowledging that this panel could revisit the issue.

***District of Lower Merion***, 197 A.3d 730 (Pa. 2018). Rather than focusing upon "whether a **trial-like proceeding** may have been conducted[,]" the Supreme Court directed courts to "focus[], in the first instance, on the stage of the proceedings" and specifically whether "**the decision**" has been issued that "disposes of all claims for relief." ***Id.*** at 740 (emphasis added). "Where 'the decision' in the case has not yet issued, Rule 227.1 is not implicated." ***Id.***

Applying ***Wolk*** to the instant case, we find that the January 23, 2023 order did not dispose of all claims. Rather, when the trial court filed its order, it had yet to address North Side's petition to disqualify Schenley Capital's counsel or the distribution of the $69,193.55 in escrow. Moreover, the trial court granted only conditional relief to Top Choice. Thus, as in ***Wolk***, we conclude that "'the decision' of the case was not rendered for purposes of Rule 227.1, and no post-trial motions were implicated under that rule." ***Wolk***, 197 A.3d at 741.[5]

In the absence of a decision requiring post-trial motions, we instead find these appeals proper under Pa.R.A.P. 311(a)(2), which provides that interlocutory orders "affecting the possession or control of property" are

---

[5] In addition to predating ***Wolk***, we find ***G & G Investors, LLC*** factually distinguishable from the instant case as the trial court's decision in ***G & G Investors, LLC*** apparently resolved all claims by denying the conservatorship petition. ***G & G Inv'rs, LLC***, 183 A.3d at 475. Moreover, we find the citation to ***G & G Investors, LLC*** in ***Scioli*** to be *dicta,* as the issue in ***Scioli*** was not whether Rule 227.1 required the filing of post-trial motions but whether a document constituted a post-trial motion.

appealable as of right.[6]   While this Court has not addressed the applicability of Rule 311(a)(2) to the Act, the Commonwealth Court has held that orders denying petitions for appointment of a conservator under the Act "fall[] squarely within Rule 311(a)(2)" because they "affect[] the possession or control of property[.]" ***Philadelphia Cnty. Dev. Coal., Inc. v. Philadelphia Redevelopment Auth***., 298 A.3d 172, 177-178 (Pa. Cmwlth. 2023) (citation omitted).  We agree and proceed to address the merits of Appellants' issues.

**B.**

It is well-established that "[o]ur review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law." ***G & G Invs., LLC***, 183 A.3d at 478 (citation omitted).  When a trial court sits as factfinder, we accord the court's findings "the same weight and effect as the verdict of a jury." ***Id***. (citation omitted).  Thus, we consider not whether "we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion." ***Id.*** (citation omitted).

---

[6] Pa.R.A.P. 311(a)(2) provides that "[a]n appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from . . . [a]n order confirming, modifying, dissolving, or refusing to confirm, modify or dissolve an attachment, custodianship, receivership, or similar matter affecting the possession or control of property, except for orders pursuant to 23 Pa.C.S. §§ 3323(f), 3505(a)." Pa.R.A.P. 311(a)(2).

Interpretation of statutory language, however, presents a question of law, for which we apply a *de novo* standard of review. *See Scioli Turco, Inc.*, 207 A.3d at 350. In interpreting statutory language, our goal is to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* at § 1921(b). When faced with statutory ambiguity, we may consider, *inter alia*, "[t]he occasion and necessity for the statute[,]" "[t]he mischief to be remedied[,]" and "[t]he object to be attained." *Id.* at § 1921(c).

"[I]n determining whether language is clear and unambiguous, we must assess it in the context of the overall statutory scheme, construing all sections with reference to each other, not simply examining language in isolation." *Whitmoyer v. Workers' Comp. Appeal Bd. (Mountain Country Meats)*, 186 A.3d 947, 954 (Pa. 2018). Moreover, "although [courts are] admonished to listen attentively to what a statute says[; we] must also listen attentively to what it does not say." *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001) (citation and internal quotation marks omitted).

The General Assembly enacted the Abandoned and Blighted Property Conservatorship Act to address the adverse effects of abandoned and blighted property on Pennsylvania's communities. 68 P.S. § 1102(2). The Legislature determined that, where an owner fails to maintain a property, it "is in the best

interest of the Commonwealth, the municipality and the community for the [trial] court . . . to appoint a conservator to make the necessary improvements before the building deteriorates further and necessitates demolition[.]" *Id.* at § 1102(6).

The Act, however, limits those who may file a conservatorship petition to "a party in interest." *Id.* at § 1104(a). As relevant to the instant case, a "party in interest" includes "[a] person or entity who has a direct and immediate interest in a residential, commercial or industrial building, including . . . [a] resident or business owner within 2,000 feet of the building." *Id.* at 1103("Party in Interest")(3).

The court may appoint a conservator if the statutory "[c]onditions for conservatorship" are met at the time the party filed the petition, which include consideration of whether the building is a "public nuisance[,]" or "unfit for human habitation[.]" *Id.* at 1105(d)(5)(i), (iii). In such cases, however, the court need not appoint a conservator but instead may grant "conditional relief" to allow the owner to abate "the conditions, violations or nuisance or emergency condition[.]" *Id.* at § 1105(f)(1). If the owner elects to "sell the property subject to the conservatorship," then the owner "shall reimburse the petitioner for all costs incurred by the petitioner in preparing and filing the petition" in addition to "the conservator's or developer's fee," which as relevant to the instant case can be "twenty percent of the sale price of the property." *Id.* at § 1105(f)(4), 1103("Conservator's or developer's fee")(3).

**C.**

In both its issues, Schenley Capital asserts that the trial court erred in finding that North Side had standing to file a conservatorship petition. It contends that North Side was not a "party in interest" because it failed to meet the 2,000-foot geographic proximity requirement set forth in Section 1103. Schenley Capital's Appellant Br. at 17-18.

In addressing this issue, we must first determine the proper method for measuring the 2,000-foot geographic proximity requirement as that issue has not been addressed by our Court. The trial court concluded that the proper method was to measure the straight-line distance between the two relevant properties, colloquially "as the crow flies." Trial Ct. Op., 5/5/23, at 7. In so holding, the court rejected a measurement based upon the navigable distance a person would walk or drive between the properties. It is undisputed that the use of a straight-line measurement would encompass a larger geographic area than the use of a navigable measurement, absent a perfectly straight road between the two properties.

The trial court reasoned that the straight-line measurement was "consistent with the purpose of the [Act]" because it would "create more potential conservators" which would "increase[e] the chances one of them will decide to be a conservator who rehabilitates a blighted building[,]" thus improving the quality of life in the community. *Id.* (citing the Act's purpose in 68 P.S. § 1102(5)).

After careful consideration, we are constrained to reject the trial court's interpretation and instead conclude that the plain language of Section 1103's definition does not permit application of a straight-line measurement to the phrase "within 2,000 feet," when properly considered "in the context of the overall statutory scheme[.]" **Whitmoyer**, 186 A.3d at 954.

Rather, the General Assembly clearly indicated when it intended to apply a straight-line measurement by utilizing the term "radius." As shown below, in defining a "party in interest[,]" the legislature employed the radius/straight-line measurement for "nonprofit corporations" but not for "[a] resident or business owner[,]" such as North Side:

> "Party in interest." A person or entity who has a direct and immediate interest in a residential, commercial or industrial building, including:
>
> * * * *
>
> (3) A resident or business owner **within 2,000 feet of the building**.
>
> (4) A nonprofit corporation, including a redevelopment authority, which . . . is located in the city [of the first class] and has participated in a project **within a five-mile radius of the location of the building**. . . .

68 P.S. § 1103 (emphasis added). The use of different language in the same definition demonstrates a legislative intent to provide for different methods of calculation. We cannot ignore that the General Assembly did not draft the geographic proximity requirement applicable to residents and business owners as "within a 2,000-foot radius of the building" but instead dictated a requirement of "within 2,000 feet of the building." Thus, the plain language

of the provision demonstrates that the Legislature did not intend to measure the distance for residents or business owners using the straight-line distance between the petitioner's property and the blighted property.

Moreover, we find this definition to be consistent with the treatment of residents and business owners as opposed to non-profit corporations in the overall statutory scheme of the Act. Notably, the Legislature imposed a relatively restrictive geographic proximity requirement on residents and business owners by requiring that they exist within 2,000 feet of the blighted property, in contrast to the five-mile geographic proximity requirement applied to non-profit corporations and redevelopment authorities with experience in rehabilitating blighted buildings. *Id.* This distinction in treatment is also apparent in the guidance provided to courts in appointing a conservator, as the Act instructs courts to "give preference to the appointment of a nonprofit corporation or governmental unit over an individual." *Id.* at § 1105(e). Thus, rather than attempting to maximize the number of potential residents or business owners who could act as conservators, as suggested by the trial court, we find that the limitations on residents and business owners supports the legislative concern for "citizens who live **in proximity** to such substandard buildings, as well as those who own property **in the vicinity** of such buildings." *Id.* at § 1102(2) (emphasis added).

Accordingly, we hold that the plain language of the statute when viewed in conjunction with the adjoining provisions and in the context of the Act

requires measurement of the 2,000-foot geographic proximity requirement using the navigable walking or driving distance rather than a straight-line distance between the petitioner's property and the blighted building.

On the record before us, however, we are unable to determine whether North Side is within 2,000 feet of the Property based upon the navigable distance between the two properties. While Schenley Capital and Top Choice presented Google Maps evidence indicating that that the navigable routes between North Side and the Property are 0.5 miles, which would be 2,640 feet, the trial court questioned the precision of the Google Maps evidence. Trial Ct. Op. at 7. Additionally, the trial court found that the parties should have utilized slightly different addresses for the properties.[7] The court noted that the revised addresses were closer to each other than the addresses used for the Google Map calculations. *Id.* We defer to these factual findings of the trial court.

Accordingly, we vacate the trial court's order to the extent it is based on the conclusion that North Side met the 2,000-foot geographic proximity requirement and remand for the trial court to determine whether North Side is within 2,000 feet of the Property by calculating the navigable distance between the two properties. We note that the court may consider this issue

_____

[7] Specifically, the court credited North Side's owner's testimony that the North Side's address was 1000 Constance Street rather than 1004 Constance Street. *Id.* at 7-8. The court additionally observed that a deed identified the Property's address as including both 505 and 507 East Ohio Street. *Id.*

in conjunction with the postponed hearing regarding the division of the escrowed funds.

**D.**

Turning to North Side's appeal, North Side first argues that the trial court erred in overruling its objection to Mr. Terry O'Neill's legal authority to sell the Property on behalf of O'Neill Maintenance. North Side's Appellant Br. at 9-17. The trial court, however, found that North Side did not raise an objection to Mr. O'Neill's authority at the hearing nor did it present this issue prior to the current appeal. Trial Ct. Op. at 3. The court further rejected North Side's claim that the hearing transcript failed to capture its objection to Mr. O'Neill; instead, the court found that "[t]he evidentiary hearing was 'fully and accurately' transcribed by the [c]ourt [r]eporter." *Id.* We defer to the trial court's factual findings, especially where Appellant has not directed us to any evidence to contradict the court reporter's transcription. Moreover, we agree that the trial court could not have erred in overruling an objection that North Side never raised and that North Side waived this issue by failing to raise it in the trial court. *See* Pa.R.A.P. 302(a). Accordingly, no relief is warranted on this issue.

In its second issue, North Side argues that the trial court erred in not disqualifying Schenley Capital's counsel, Attorney Benjamin Klein, based on counsel's failure to disclose his ownership interest in Schenley Capital. North Side's Appellant Br. at 17-21. North Side argues that counsel's failure to

disclose his interest violated Rule of Professional Conduct 3.7, which prohibits counsel from acting as an advocate in a proceeding where they are "likely to be a necessary witness" absent certain inapplicable exceptions. North Side's Appellant Br. at 19 (quoting Pa.R.P.C. 3.7(a)). North Side alleges that, by failing to disclose his ownership interest, Attorney Klein also violated Rule 8.4(c) and (d), which prohibit lawyers from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation" as well as "conduct that is prejudicial to the administration of justice[.]" Pa.R.P.C. 8.4.

We reject these claims. As the trial court observed, North Side appealed from the trial court's January 23, 2023 order. It has not appealed from the court's subsequent February 7, 2023 order, denying North Side's motion to disqualify Attorney Klein. Thus, as the February 7, 2023 order is not before this Court, no relief is warranted on this issue.[8]

### E.

In conclusion, as to Schenley Capital's appeal, we vacate the trial court's order to the extent it concluded that North Side had standing to file a petition for conservatorship and remand for further proceedings. We affirm the order

---

[8] The trial court additionally opined that it did not err in denying disqualification under the Rules of Professional Conduct. The court concluded that Attorney Klein was not a necessary witness given that his father testified as a representative of Schenley Capital. The court also reasoned that "[w]hile [Attorney Klein] should have been more forthright about being a member of Schenley Capital, this did not rise to the level of 'dishonesty, fraud, deceit or misrepresentation[]'" and did not "impact the fairness of the evidentiary hearing" nor did the court anticipate any impact on the "fairness of the litigation remaining." Trial Ct. Op. at 6.

in all other respects, including on the issues raised by North Side. We additionally direct the Prothonotary to reconsolidate these appeals.

Order affirmed in part, vacated in part, and remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/31/2024