**JANUS MANAGEMENT SERVICES, INC. and Charter Capital Corporation, Appellant,**

v.

**David SCHLESSINGER, Appellee.**

Superior Court of Pennsylvania.

Argued July 23, 2002.

Filed Oct. 7, 2002.

Reargument Denied Dec. 10, 2002.

Thomas E. Zemaitis, Berwyn, for appellant.

Jonathan Hollin, King of Prussia, for appellee.

Before STEVENS, KLEIN and TAMILIA, JJ.

KLEIN, J.

¶ 1 Plaintiffs/appellants Janus Management Services, Inc. and Charter Capital Corporation (collectively "Tiber") filed an action in equity against David Schlessinger and sought to impose a constructive trust on certain property known as the Willistown Property. Schlessinger sold the property prior to the resolution of this case by the trial court, and then Tiber sought to impose a constructive trust on the proceeds from the sale of that property.

¶ 2 The trial court refused to impose the constructive trust. We affirm, but for another reason. We agree with the trial court that Tiber's complaint for a constructive trust on the Willistown Property did not include a claim for the *proceeds* of the sale of the property, and Tiber's amendment after judgment was already rendered was too late. We disagree with the trial court finding that Schlessinger was not a *bona fide* purchaser for value. At the time Schlessinger bought the property, he did know that there was a claim by Tiber for a constructive trust on the Willistown Property, then owned by the DeLoreto brothers. However, the Tiber claim against the DeLoreto brothers for a constructive trust had been dismissed, the trial court denied Tiber's motion for a *lis pendens,* and the Superior Court had denied Tiber's request for a *lis pendens* during appeal.

¶ 3 We hold that it is not enough to know that there is a *claim* against a property to disqualify one from being a *bona fide* purchaser for value. When two courts deny a *lis pendens,* and the underlying complaint has been dismissed, unless the

buyer has actual knowledge of the *merit* of the claim against the property, he is free to take clear title. To hold otherwise would significantly interfere with the free transfer of real property. Any claim, no matter how frivolous, could tie up property for years.

¶ 4 Because of the complicated nature of the transactions, we will review the facts in some detail.

¶ 5 Schlessinger bought the Willistown Property from brothers Michael and Andrew DeLoreto. The brothers were two of the principals of Tiber, a family business. Apparently the DeLoreto brothers improperly diverted funds from Tiber, and the other family members controlling Tiber, DeLoreto's parents and sister, have been engaged in multiple lawsuits against the brothers.

¶ 6 Tiber claimed, and ultimately was successful in its claim, that the DeLoreto brothers diverted $225,000 from Tiber and leveraged that sum to purchase the Willistown property. Ultimately, Schlessinger bought the Willistown Property from the DeLoreto brothers, giving the DeLoreto brothers a profit of approximately $1,000,000 on the transaction. Tiber was successful in obtaining a constructive trust against the proceeds the DeLoreto brothers received from the sale and have been collecting funds from houses bought by the DeLoreto brothers and their respective wives.

¶ 7 Apparently Tiber was not able to recover all the diverted money—and the profit on the diverted money—from the DeLoreto brothers. Tiber then brought the instant lawsuit, attempting to impose a constructive trust, first on the property purchased by Schlessinger, and then on the proceeds Schlessinger received from the sale of the Willistown Property. It is noted that Schlessinger suffered a net *loss* of approximately $1,000,000 when he sold.

¶ 8 The Willistown Property was formerly owned by Defendant/appellee David Schlessinger. The Court of Common Pleas of Chester County found against Tiber and for Schlessinger. While basing our decision on different grounds, contrary to the trail court we find that Schlessinger was a *bona fide* purchaser for value, we affirm.

¶ 9 Essentially, there was a fight between the family members that were principals in Tiber. There was a claim that two brothers misappropriated over $225,000 and used it to buy property, including the Willistown Property. Schlessinger knew of the claim, and conditioned his purchase of the property on the removal of the *lis pendens* that Tiber had placed on the property. The Chester County Court removed the *lis pendens* and dismissed the underlying equity action. Tiber asked this court for a *lis pendens* during their appeal, which we denied. It was then that Schlessinger went ahead with the purchase of the property. He paid fair value for the property, and probably paid too much. Ultimately he lost nearly a million dollars on the transaction. Tiber's position is that because Schlessinger knew of the fight concerning the property, he is not a *bona fide* purchaser for value. That is not the case. It is clear that while Schlessinger knew of Tiber's claim, he had no knowledge of the *merits* of that claim. So that frivolous claims cannot tie up real estate for years during lawsuits, a buyer is entitled to rely on the decision of both the Common Pleas Court and the Superior Court when a *lis pendens* is removed. If two courts determine that there is no reason to prevent a seller from conveying clear title, there is no reason to punish the buyer. In some cases, the buyer may actually know the underlying claim has merit and may be collaborating with the seller. That is not the case here.

Schlessinger has already lost almost a million dollars on this transaction. There is no reason to make him turn over what he was able to salvage from the transaction. If the people at Tiber were not able to keep control over their company, they have no right to make an innocent third party make up their losses.

¶ 10 In addition, Schlessinger no longer owned the property when Tiber sought to impose the constructive trust on him, the prayer for relief was not broad enough to include the proceeds from Schlessinger's sale, and Tiber did not timely amend their petition. For this reason as well we affirm the decision to refuse to impose a constructive trust on the proceeds of the sale.

¶ 11 The following are the details of this unseemly family fight between two brothers, Michael and Andrew DeLoreto ("brothers") and their parents and sister. All were shareholders and officers of the Tiber Holding Corporation. Two panels of this Court as well as other courts in Pennsylvania and elsewhere have already been burdened with parts of this ugly litigation.

¶ 12 Essentially, the key parts of this part of the saga unfold as follows:

1. In late 1987, the brothers purchased 32.5 acres in Chester County, the Willistown Property, for $975,000. $229,728.55 of those funds was diverted from Tiber.

2. On January 20, 1989, Tiber brought an action at law in the Chester County Court of Common Pleas against the brothers, their wives and VFC Associates, a partnership formed by the brothers. This suit claimed that the brothers had improperly diverted corporate funds for their own use.

3. On the same day, January 20, 1989, Tiber caused a *lis pendens* to be docketed against the Willistown Property.

4. Also on January 20, 1989, Tiber sought the imposition of a constructive trust on the Willistown Property.

5. By Agreement of Sale dated February 3, 1989, Attorney Timothy Barnard, acting as agent for Defendant David Schlessinger, entered into an agreement to purchase the Willistown Property for a total purchase price of $2,170,000, conditioned upon removal of the *lis pendens*.

6. On June 22, 1989, Judge Wood of the Chester County Court of Common Pleas dismissed the equity action because plaintiffs had filed a prior action at law against the brothers for money damages.

7. On July 10, 1989, the Chester County Court struck the *lis pendens*, effective 5:00 p.m. June 13, 1989.

8. On July 13, 1989, the Superior Court denied Tiber's petition to maintain the *lis pendens* during their appeal from the June 22, 1989 order dismissing the action in equity.

9. On July 14, 1989, the *lis pendens* was stricken pursuant to a Praecipe filed by counsel for the brothers.

10. On July 14, 1989, the Willistown Property was conveyed by the brothers to David Schlessinger for the previously agreed to sum of $2,170,000. The parcel had been divided between the two brothers and their wives.

11. After investing another $600,000 in the Willistown Property, Schlessinger ultimately sold the property for a total of $1,900,000, resulting in a loss to Schlessinger of approximately $900,000.

¶ 13 This appeal involves an action filed on August 27, 1990 that sought to enforce a constructive trust against David Schles-

singer for the Willistown Property, on the grounds that he was not a *bona fide* purchaser and that there existed a constructive trust imposed on the property against the brothers. However, the constructive trust against the brothers was not imposed until April 1996, when the Chester County Court determined that the DeLoretos had held the property subject to the trust on behalf of Tiber. As a result of that trust, the proceeds of their sale to Schlessinger were subject to the constructive trust.

¶ 14 Tiber, however, was not satisfied with trying to track down the funds received by the brothers from their sale of the Willistown Property, which resulted in a profit of over a million dollars (leveraged from the $229,000 diverted from Tiber). They continued with their claim that Schlessinger was subject to the constructive trust it sought against the brothers and which the Court did not decree until more than five years after Schlessinger had bought the property.

¶ 15 During the pendency of that litigation, Schlessinger sold the property at the loss described above. Therefore, at the time of the trial, Schlessinger did not own the property and would not have been able to transfer it to Tiber. Tiber did not then move to amend the complaint to ask for a constructive trust on the proceeds of the Schlessinger sale until after judgment for Schlessinger was entered by the court.

¶ 16 In denying the petition for constructive trust, the trial court found the equities lay with Schlessinger and not Tiber. The court gave a variety of reasons to support its finding, including: (a) the fact that Schlessinger no longer owned the property, the prayer for relief was not broad enough to cover the proceeds and the petition to amend was not filed until after final judgment; (b) the evidence presented by Tiber did not indicate how much money it had already recovered from the brothers and so did not indicate how much was still due; and (c) the judgment, in no event, would include 100% of the monies received by Schlessinger, but only the amounts attributed to the approximately 20% of the brothers purchase price that originally came from Tiber.

¶ 17 Finally, the trial court stated that because Schlessinger's attorney knew there was an appeal pending regarding the denial of the original constructive trust, Schlessinger was not a *bona fide* purchaser for value. We disagree with this and find that Schlessinger was, in fact, a *bona fide* purchaser for value, and therefore no imposition of a constructive trust is proper. While we agree with the other reasons stated in the trial court's opinion, because we base our decision on the fact that Schlessinger was a *bona fide* purchaser, we will not add to the reams of paper already expended on this case by discussing those issue at length.

¶ 18 We agree with the position taken by the *Amicus Curiae*, Pennsylvania Land Title Association. To insure the free transferability of real estate, purchasers must be entitled to rely on the decisions of our courts when they remove a *lis pendens* and deny a petition to impose a constructive trust on a parcel of land because of a collateral claim against the seller not directly affecting the title to the real estate.

¶ 19 Consequently, we hold that when a landowner has gone to a court of competent jurisdiction seeking the discharge of record of a *lis pendens*, a purchaser and the title insurer shall be able to rely on the decision striking that *lis pendens* and the real estate transaction may close. Of course, there would be an exception if the purchaser is a participant in an unlawful scheme or in fact knows that the underlying claim of fraud against the seller is meritorious.

An innocent purchaser for value, having neither actual nor constructive knowledge of claims of a third party, holds the title acquired free of any such secret equities. Where one of two innocent parties must suffer, he whose neglect makes the injury possible must bear the responsibility.

*Lund v. Heinrich,* 410 Pa. 341, 189 A.2d 581, 584 (1963).

¶ 20 We fail to see how Schlessinger, who relied upon not only the trial court but also a decision of this court in the removal of the *lis pendens,* can be charged with neglect. *Lis pendens* is notice to the world that a cloud over the title to a property exists. Once the *lis pendens* is stricken by a court, that is equally notice to the world that there is no longer a valid claim on the title, no matter the merits of the underlying action. *See generally Dice v. Bender,* 383 Pa. 94, 117 A.2d 725 (1955).[1]

¶ 21 If every time there is an appeal of an issue in the underlying matter a buyer could not obtain clear title until the appeals were ultimately disposed, no title insurance company would insure the property and transactions could be stalled for years. This would have a two-fold effect. One, the appellate process would render meaningless the striking of the *lis pendens.* By delaying the insurability of title through appeal, even after the *lis pendens* was stricken, we would effectively be maintaining the *lis pendens.* This is an absurd result. Two, as can be seen from this case, where the net value of the property when resold by Schlessinger was for a million dollars less than the brothers received, such a delay occasioned by the

appeal could deprive sellers of profits to which they would be entitled. Any frivolous claim and appeal could wreak havoc on sellers and only sets the stage for abuse.[2]

¶ 22 While Schlessinger is charged with the knowledge that the original decision refusing to grant a *lis pendens* and denying the petition for constructive trust was on appeal, he had no means of knowing the merits of the underlying claim between Tiber and the brothers. What he did know, and all he should be compelled to investigate, was that the courts had found there to be no claim on the title of the land in question. He should not have been required to play a guessing game as to the ultimate outcome of the underlying action. To rule otherwise would require a prospective buyer to make a factual and legal determination regarding a pending lawsuit to which he is not a party. This is also an absurd result.

¶ 23 Two stipulations of fact by the parties in this case are particularly pertinent to this appeal:

(a) that Defendant possessed a good faith belief that title to the Willistown Property was without pertinent cloud or encumbrance at the time of conveyance to him on July 14, 1989;

(b) that Defendant knew as of his purchase of the Willistown Property on July 14, 1989 that claims involving his sellers and certain of their family companies included allegations of conversion or embezzlement but that he had no knowledge as to the truth of or support for such claims.

1. While it would seem the same principle would apply if there is a direct claim to the title of the property rather than a collateral claim to secure monies due from the seller, that issue is not currently before us and so we do not decide that issue.

2. A possible remedy for an aggrieved third party is for this Court to grant a *lis pendens* during the appeal. In this case, such a petition was filed but was denied.

Trial court opinion, Factual Finding # 52, pp. 29–30.

¶ 24 As noted, there may be circumstances where a buyer has actual knowledge of, or is an active participant in, fraud and therefore cannot assume the status of a *bona fide* purchaser. That is the reason this Court remanded the case for a finding as to the underlying facts, to determine whether Schlessinger had actual knowledge, not of the claim of fraud, but of the fraud. The stipulated facts make it clear that he did not have actual knowledge of the fraud, but only of the claim. In fact, at the time of the purchase, that claim of fraud was being vigorously contested by the brothers.

¶ 25 We have been able to find no prior Pennsylvania case law directly on point to the issues before us. However, the New York Court of Appeals has addressed this issue and we are in agreement with their reasoning.

> Since the ability to transfer clear title is a natural incident of ownership, it follows that when a complaint involving title to or the right to possess and enjoy real property has been dismissed on the merits and there is no outstanding notice of pendency or stay, the property owner has a right to transfer or otherwise dispose of the property unrestricted by the dismissed claim.

*Da Silva v. Antonio Musso,* 76 N.Y.2d 436, 560 N.Y.S.2d 109, 559 N.E.2d 1268, 1270 (1990)

> And further,
>
> If, as plaintiff argues, a purchaser's actual knowledge of a pending appeal constitutes a lack of good faith within the meaning of CPLR 5523, there would be no need for an unsuccessful claimant to take the necessary steps to preserve his notice of pendency by obtaining a stay of the adverse judgment during the pendency of his appeal. Instead, the same result could be achieved by simply ascertaining the identity of potential purchasers and notifying them that an appeal was pending. In this manner, despite having lost on the merits in the court below, the appealing claimant could interfere with the marketability of the defendant owner's property without experiencing the inconvenience and practical difficulties of having to obtain a judicial stay and, quite possibly, having to give an undertaking to secure the owner against loss. Neither the relevant statutes nor the common-law rules governing the parties' post-judgment rights may be invoked to require such an unjust conclusion.

*Id.* at 1272.

¶ 26 In light of the foregoing, we affirm the judgment below.

¶ 27 STEVENS, J., concurs in the result.