J-A14038-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| JOHN R. FREY, ELAINE H. FREY, ROBERT G. FREY, SUE FREY, JAMES MILLER, AND ROBIN MILLER | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>: |
| v. | : |
| BONNY GOLD, DENNIS GOLD, SLURRY TECHNOLOGIES OPERATING, LLC, SLURRY TECHNOLOGIES OPERATING, INC., PILGRIM ENERGY COMPANY, PILGRIM COAL COMPANY, CHARLES MUSE, A.C. MUSE, ESUM PARTNERSHIP NO. 2, SLURRY TECHNOLOGIES, INC., AGGREGATE SOLUTIONS, INC., ALBERT C. MUSE/REPRESENTATIVE OF THE ESTATE OF CHARLES H. MUSE, JR., DECEASED, ALBERT C. MUSE/REPRESENTATIVE OF THE ESTATE OF CHARLES HOWARD MUSE, JR. | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: |
| v. | : |
| JAMES AND ROBIN FREY MILLER | : |
| APPEAL OF: BONNY GOLD, DENNIS GOLD AND DEWATERING SERVICES, LLC | : <br>: <br>: No. 1469 WDA 2019 |

Appeal from the Order Entered September 6, 2019
in the Court of Common Pleas of Venango County
Civil Division at No(s): 2002-00232

BEFORE: SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          FILED SEPTEMBER 16, 2020

Dennis Gold ("Gold"), Bonny Gold, and Dewatering Services, LLC ("Dewatering Services") (sometimes collectively referred to as the "Appellants"), appeal from the September 6, 2019, Order finding Gold and Dewatering Services in contempt of the trial court's August 29, 2017, Charging Order (the "Charging Order"), and ordering Gold to make payments to John R. Frey, Elaine H. Frey, Robert G. Frey, Sue Frey, James Miller, and Robin Miller (collectively, the "Plaintiffs") for all distributions Gold received from Dewatering Services after September 1, 2017. We affirm.

On October 3, 2001, Plaintiffs filed a Complaint against Gold, Bonny Gold, and other parties unrelated to this appeal, wherein they asserted various causes of action related to business dealings between the parties.[1] Following a lengthy discovery period, a jury trial commenced on November 14, 2014, and concluded on November 24, 2014. The jury found, inter alia, in favor of Plaintiffs as to their claims against Gold, and awarded Plaintiffs in excess of two million dollars. On July 6, 2016, Judgment on the verdict was entered.

On May 22, 2017, Plaintiffs filed a "Motion for Supplementary Relief in Aid of Execution in the Form of a Charging Order" (the "Motion

---

[1] We note that Dewatering Services was not a party to the original action filed by Plaintiffs.

for a charging order").[2]   Therein, Plaintiffs alleged that Gold was the sole member of Dewatering Services, and requested that the trial court enter a Charging Order against Gold's transferable interest in Dewatering Services, pursuant to 15 Pa.C.S.A. § 8853, to satisfy the approximately two million dollar Judgment.  Plaintiffs claimed that they were entitled to any current or future distributions to which Gold was entitled from Dewatering Services, and any contributions Gold had made to Dewatering Services.

On August 29, 2017, the trial court granted Plaintiff's Motion, in part, and issued the Charging Order "with respect to whatever transferable interest [Gold] has in Dewatering Services []."  The Charging Order further stated,

> Any and all future distributions due to [Gold] by Dewatering [Services] shall be paid or otherwise turned over to Plaintiffs.  No further distributions shall be made by Dewatering [Services] to [Gold] until Plaintiffs' [J]udgment has been paid in full.  [] [Gold] and Dewatering [Services] shall not divert any

---

[2] Prior to Plaintiffs' filing of the Motion for a Charging Order, the Judgment was appealed to this Court.  Although a trial court lacks jurisdiction to take action in a matter after an appeal is taken, Pa.R.A.P. 1701(a), the trial court's subsequent actions were permitted to preserve the status quo and enforce the judgment.  See Pa.R.A.P. 1701(b) (stating that "[a]fter an appeal is taken … the trial court … may: (1) Take such action as may be necessary to preserve the status quo … [and] (2) Enforce any order entered in the matter…."); see also Forrester v. Hanson, 901 A.2d 548, 554 (Pa. Super. 2006) (stating that "[t]his Court can raise the issue of jurisdiction sua sponte.").

This Court affirmed the July 6, 2016, Judgment on October 31, 2017.  See Frey v. Gold, 179 A.3d 622 (Pa. Super. 2017) (unpublished memorandum), appeal denied, 187 A.3d 905 (Pa. 2018).

distributions due to [Gold] to any other individual or entity. Dewatering [Services] shall not amend, revise, or modify its operating agreement to allow for the diversion of any distributions to which [Gold] would or may be entitled.

Charging Order, 8/29/17, at 1-2 (unnumbered)

On March 16, 2018, Plaintiffs filed a "Motion to Hold Dewatering Services [] and [] Gold in Contempt of Court and/or to Enforce Charging Order." Therein, Plaintiffs alleged that subsequent to the trial court's entry of the Charging Order, Gold had received distributions from Dewatering Services, totaling $30,100.00, in violation of the Charging Order. Plaintiffs requested that the trial court (1) find Gold and Dewatering Services to be in contempt of the Charging Order; (2) order Gold to pay Plaintiffs for any distributions he received from Dewatering Services after entry of the Charging Order; (3) order Gold and Dewatering Services to continue to comply with the Charging Order; (4) award Plaintiffs reasonable counsel fees for pursuing the Motion to enforce the Charging Order; and (5) impose a fine of $500 against Dewatering Services and Gold for every day that they continue to violate the terms of the Charging Order.

Following a series of continuances, on August 1, 2018, the trial court held a hearing on Plaintiffs' Motion. Gold testified on behalf of Dewatering Services and himself, and the parties stipulated to the admission into evidence of the transcript from a deposition of Gold.

On September 6, 2019, the trial court entered an Order granting in part and denying in part Plaintiffs' Motion to enforce the Charging Order.

Specifically, the trial court (1) decreed that Gold and Dewatering Services were in contempt of the Charging Order,[3] and had violated the Charging Order by "re-characterizing the monies [] Gold had previously received from Dewatering Services[] as distribution payments as salary payments"; and (2) ordered that Gold and Dewatering Services pay to Plaintiffs "all distributions that have been made" following entry of the Charging Order, and to otherwise comply with the Charging Order.  Trial Court Order, 9/6/19, at 1-2.[4]  Gold and Dewatering Services filed a timely Notice of Appeal.  The trial court did not order Gold and Dewatering Services to file a Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Gold and Dewatering Services present the following claims for our review:

> A. Whether the trial court abused its discretion or committed an error of law by finding, in the absence of any supporting evidence, that payments made by [Dewatering Services] to Gold before the entry of the Charging Order were prohibited distributions?
>
> B. Whether the trial court abused its discretion or committed an error of law by finding, in the absence of any supporting

_____

[3] It is unclear whether 15 Pa.C.S.A. § 8853 grants a trial court authority to hold in contempt a limited liability company in which the debtor holds a transferable interest.  See 15 Pa.C.S.A. § 8853.  Nevertheless, because neither party has questioned whether the court could hold Dewatering Services in contempt, we will not address this potential issue herein.

[4] Although Bonny Gold was a party to the original action, she was not included in the Charging Order's directives, and was not found in contempt thereof.

evidence, that payments made by [Dewatering Services] to Gold after the entry of the Charging Order were prohibited distributions?

Brief for Appellants at 5. We will consider Appellants' claims together as they are related.

Appellants allege that the trial court abused its discretion in determining that the payments Gold received from Dewatering Services, before and after entry of the Charging Order, were "distributions" as that term is defined in the Pennsylvania Uniform Limited Liability Company Act of 2016, 15 Pa.C.S.A. §§ 8811-8898 (hereinafter, "the LLC Act"). See Brief for Appellants at 21-36. Appellants claim that the payments Gold received from Dewatering Services, which were labelled "draw[s] on company funds" prior to the entry of the charging Order, were compensation for services he rendered to Dewatering Services as an employee. Id. at 23-36. Appellants argue that the definition of "distributions" explicitly excludes these salary payments. Id. at 24.

Both of Appellants' arguments assert that the trial court incorrectly applied the LLC Act. See 15 Pa.C.S.A. §§ 8811-8898.

> When reviewing a trial court's interpretation of a statute, our standard of review is de novo, and our scope of review is plenary. The objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. Generally, the best indication of the General Assembly's intent is the plain language of the statute. When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent.

- 6 -

Waldron Elec. Heating & Cooling, Inc. v. Caseber, 174 A.3d 1123, 1127 (Pa. Super. 2017) (quotation marks, citations, and brackets omitted). To the extent that Appellants' arguments are based upon the trial court's findings of fact and credibility determinations, our review is limited to determining whether the findings are supported by the record. See G & G Inv'rs, LLC v. Phillips Simmons Real Estate Holdings, LLC, 183 A.3d 472, 478 (Pa. Super. 2018). "[T]his Court is not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder." Ruthrauff, Inc. v. Ravin, Inc., 914 A.2d 880, 888 (Pa. Super. 2006).

Section 8853 of the LLC Act states, in relevant part, as follows:

(a) General rule.--On application by a judgment creditor of a member or transferee, a court may enter a charging order against the transferable interest of the judgment debtor for the unsatisfied amount of the judgment. ... [A] charging order constitutes a lien on a judgment debtor's transferable interest and requires the limited liability company to pay over to the person to which the charging order was issued any distribution that otherwise would be paid to the judgment debtor.

(b) Available relief.--To the extent necessary to effectuate the collection of distributions pursuant to a charging order in effect under subsection (a), the court may:

* * *

(2) make all other orders necessary to give effect to the charging order.

15 Pa.C.S.A. § 8853(a), (b).

The LLC Act defines a "distribution" as

- 7 -

[a] direct or indirect transfer of money or other property or incurrence of indebtedness by a limited liability company to a person on account of a transferable interest or in the person's capacity as a member. The term:

(1) includes:

(i) a redemption or other purchase by a limited liability company of a transferable interest; and

(ii) a transfer to a member in return for the member's relinquishment of any right to participate as a member in the management or conduct of the company's activities and affairs or to have access to records or other information concerning the company's activities and affairs; and

(2) does not include:

(i) amounts constituting reasonable compensation for present or past service or payments made in the ordinary course of business under a bona fide retirement plan or other bona fide benefits program;

(ii) the making of, or payment or performance on, a guaranty or similar arrangement by a company for the benefit of any or all of its members;

(iii) a direct or indirect allocation or transfer effected under Chapter 3 (relating to entity transactions) with the approval of the members; or

(iv) a direct or indirect transfer of:

(A) a governance or transferable interest; or

(B) options, rights or warrants to acquire a governance or transferable interest.

15 Pa.C.S.A. § 8812.

The Official Note to Section 8853 provides relevant background regarding charging orders:

The charging order concept dates back to the English Partnership Act of 1890 and in the United States has been a fundamental part of law of unincorporated business organizations since 1914. As much a remedy limitation as a remedy, the charging order is the sole method by which a judgment creditor of a member or transferee can extract any value from the member's or transferee's ownership interest in a limited liability company.

Under this section, the judgment creditor of a member or transferee is entitled to a charging order against the relevant transferable interest. While in effect, that order entitles the judgment creditor to whatever distributions would otherwise be due to the member or transferee whose interest is subject to the order. However, the judgment creditor has no say in the timing or amount of those distributions. The charging order does not entitle the judgment creditor to accelerate any distributions or to otherwise interfere with the management and activities of the limited liability company.

....

Subsection (a)--The phrase "judgment debtor" encompasses both members and transferees. The lien pertains only to a distribution, which is defined in 15 Pa.C.S.[A.] § 8812 to exclude "amounts constituting reasonable compensation for present or past service or payments made in the ordinary course of business under a bona fide retirement plan or other bona fide benefits program." ...

15 Pa.C.S.A. § 8853, Official Note.

Notwithstanding,

[u]nder subsection (b)(2), the court has the power to decide whether a particular payment is a distribution, because that decision determines whether the payment is part of a transferable interest subject to a charging order.

EXAMPLE: Member A of ABC, LLC has for some years received distributions from the company. However, when a judgment creditor of A obtains a charging order against A's transferable interest, the company ceases to make distributions to A and instead provides a salary to A

> equivalent to former distributions. A court might deem this salary a disguised distribution. …

15 Pa.C.S.A. § 8853, Official Note.

Here, during the hearing on Plaintiffs' Motion to enforce the Charging Order, Gold testified that before Plaintiffs filed their Motion for a Charging Order, he received payments that were "labeled by [Dewatering Services'] CPA as a draw on the company. Draw on Company funds." N.T., 8/1/18, at 18; see also N.T. (Gold's Deposition), 6/30/18, at 12 (wherein Gold stated that prior to Plaintiffs' Motion for a Charging Order, he received "draws" from Dewatering Services totaling $27,888). Gold stated that after Plaintiffs filed the Motion for a Charging Order, there was a change in accounting at Dewatering Services, and he started receiving payments that he would later report on a W-2 federal tax form.[5] N.T., 8/1/18, at 18-19; see also id. at 25, 29 (wherein Gold stated that the change in accounting occurred at or about the time the Charging Order was entered by the trial court). Prior to this change in accounting, Gold did not report the "draws" on a W-2. Id. at 18-19.; N.T. (Gold's Deposition), 6/30/18, at 14. Gold testified that the amount of the payments did not change. N.T., 6/30/18 at 19. Gold stated

_____

[5] The IRS's website explains that "[e]very employer engaged in a trade or business who pays remuneration, including non[-]cash payments of $600 or more for the year (all amounts if any income, social security, or Medicare tax was withheld) for services performed by an employee must file a Form W-2 for each employee." About Form W-2, Wage and Tax Statement, Forms, Instructions & Publications (August 12, 2020), https://www.irs.gov/forms-pubs/about-form-w-2.

that the only things that changed were how the payments were recorded in Dewatering Services' accounting books and how he reported the payments to the federal government. Id. Gold stated that if the Charging Order had not been entered, he would not have changed the way the payments were characterized. Id. at 25. Gold further testified that prior to the Plaintiffs' Motion for a Charging Order, the draws were issued in inconsistent amounts, and depended on whether Dewatering Services had cash available after paying its expenses. N.T. (Gold's Deposition), 6/30/18, at 34-35.

In its Order finding Gold in contempt and ordering him to pay the Plaintiffs in accordance with the Charging Order, the trial court found that Gold "willfully, deliberately, and knowingly" violated the Charging Order "by re-characterizing the monies [] Gold had previously received from Dewatering Services [] as distribution payments [to] salary payments" following entry of the Charging Order. Trial Court Order, 9/6/19, at 1-2. The trial court further found that Gold "intentionally changed the method by which he received payments from Dewatering Services [] to avoid making payments to [] Plaintiffs as directed by [the Charging Order]." Id.

Upon review of the record, we conclude that the trial court did not commit an error of law in determining that prior to entry of the Charging Order, Gold received distributions from Dewatering Services, and that after entry of the Charging Order, Gold disguised the distributions as salary

payments.[6]  See Waldron Elec. Heating & Cooling, supra; 15 Pa.C.S.A.

§ 8812; id. § 8853; see also id. § 8853, Official Note.  Accordingly,

Appellants' claims fail, and we affirm the trial court's Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/16/2020

_____

[6] We note that Gold testified that the payments he received from Dewatering Services, both before and after the entry of the Charging Order, were salary payments for services he provided to Dewatering Services, and that he never received distributions from Dewatering Services.  See N.T., 8/1/18, at 15-18.  Nevertheless, from the verdict, it is apparent that the trial court found this testimony incredible, and we will not substitute our judgment for that of the factfinder.  See Ruthrauff, Inc., supra.