J-S01034-20

2020 PA Super 47

| | | |
|---|---|---|
| BARBARA WOLF | : | IN THE SUPERIOR |
| | : | COURT OF |
| v. | : | PENNSYLVANIA |
| | : | |
| MIGUEL SANTIAGO, NORIS SANTIAGO, | : | |
| KUSHNER M. LOUIS, CELIA KUSHNER, CITY | : | |
| OF PHILADELPHIA, CITY OF PHILADELPHIA | : | |
| DEPARTMENT OF REVENUE, CITY OF | : | |
| PHILADELPHIA WATER REVENUE BUREAU, | : | |
| CITY OF PHILADELPHIA BUREAU OF | : | |
| ADMINISTRATIVE ADJUDICATION, PA | : | |
| DEPARTMENT OF REVENUE, | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| DEPARTMENT OF LABOR & INDUSTRY, | : | |
| INTERNAL REVENUE U.S. DEPARTMENT OF | : | |
| TREASURY | : | |
| | : | |
| APPEAL OF: MIGUEL SANTIAGO AND | : | |
| NORIS SANTIAGO | : | No. 1274 EDA 2019 |

Appeal from the Judgment Entered May 21, 2019
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): January Term, 2018 No. 04225

BEFORE:   BOWES, J., KUNSELMAN, J. and STRASSBURGER, J.[*]

OPINION BY STRASSBURGER, J.:                    **FILED MARCH 03, 2020**

Miguel and Noris Santiago (Appellants) appeal from the judgment entered on May 21, 2019, after the trial court found that the property owned by Appellants qualified as an abandoned and blighted property in need of remediation and appointed a conservator pursuant to the Abandoned and Blighted Property Conservatorship Act (Act 135), 68 P.S. §§ 1101-1111.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

We provide the following background. Appellants are the owners of a house located at 1601 Mount Vernon Street in Philadelphia (the Property). On January 25, 2018, Barbara Wolf[1] filed a petition pursuant to 68 P.S. § 1104, where she averred that the Property is considered a "significant historical structure[] in the City of Philadelphia," and contends Appellants have left the property in a dilapidated state.[2] Petition, 1/25/2018, at ¶¶ 9, 11. Specifically, Wolf requested the trial court appoint the Spring Garden CDC as conservator. *Id*. at ¶ 34; *see also*, 68 P.S. § 1105(e) (governing the appointment of a conservator).

Hearings were held on April 18, 2018, and November 13, 2018, pursuant to subsection 1105(c). The trial court summarized the testimony as follows.

> At the time of the hearing, the parties stipulated that the rear section of the physical structure on the Property had been razed by the City due to its dangerous and unsafe condition. This resulted in the rear section of the remaining structure being exposed. After issuance of numerous code violations by the City Department of Licenses and Inspections [(L&I)], and no action

---

[1] "Since 1980 [Wolf has] resided at 656 North 15th Street in the Spring Garden section of the City, two to three blocks from the Property. [Wolf] has been a 30 year member of the Spring Garden Civic Association and a long standing member of the Spring Garden Community Development Corporation [(Spring Garden CDC)]. The property is within the designated boundaries of the Spring Garden Civic Association." Trial Court Opinion, 7/8/2019, at 2 (citations omitted).

[2] This petition was filed against Appellants. In addition, Wolf filed the petition against all lienholders of the Property.

- 2 -

by [] Appellants, the City covered but did not seal the rear exposed section to avoid further deterioration.

***

[Wolf] identified 15 photographs depicting the condition of the Property. She testified that there was trash piled up in front of the Property, graffiti on the front of the building, and brick deterioration on the front and on the side. [Wolf] further testified that the pointing between the bricks had deteriorated in the front façade, and was in need of repair and repointing between the bricks, particularly under some of the windows. Two of the windows were covered with metal grating that had rusted. Other windows were boarded by 2X4's, and one of the windows was open and exposed the interior to the elements, allowing moisture and water penetration. [Wolf] testified that the sheaving from the roof was falling in at the corners, and that a tree growing in the Property was pushing through some of the bricks.

[Wolf] testified that no one lived in the Property, and that she had not seen any electrical lights [at] the [P]roperty for years. []

[Wolf's] second witness was Michael Fox, a nearby neighbor. He testified that since 2010 he resided at 605 North 16th Street, approximately 100 feet away from the Property. [] Fox is a member of the Spring Garden Civic Association.

[] Fox testified that he has witnessed the Property decay for eight years. The rear of the Property was removed and a temporary wall put in place. There was graffiti on the front of the Property underneath the windows, a tree growing out of the top corner of the Property, and a pit in the backyard that is full of weeds and trash. [] Fox testified that the temporary fence placed in the front and side of the Property had been moved outward to encompass and block the adjacent sidewalk, forcing pedestrians to walk in the street. []

[] Fox further testified that he had not seen any effort by Appellants to address the condition at [the] Property. He did not observe work being done at the Property over the previous two years. As far as [] Fox knew, there have been no occupants at the Property or utilities connected to the Property. []

- 3 -

The next witness was Joel Schmitt, the property manager of the properties at 1603 and 1605 Mt. Vernon Street, which are immediately adjacent to the Property. [] Schmitt testified that the condition of the Property was "absolutely" having a monetary effect on the owner of the two properties under his management. He testified that "a lot of tenants have refused rental specifically because of the building next door. In a lot of cases, we actually lower the rent to get tenants in the building." [N.T., 4/18/2018, at 67.]

[] Schmitt also expressed concerns that after heavy rains, moisture and water from the Property leaked into the properties under his management; and that rodents from the Property were entering his properties. []

[Wolf] then offered the testimony of Randal Baron from the Philadelphia Historical Commission. He testified that he is a Preservation Planner, and his duties include overseeing designated historical buildings, such as review of renovation designs for compliance with the historical designation of the Spring Garden Historic District. The Property is significant within the Historic District because it was where Robert Purvis, a father of the Underground Railroad in Philadelphia, resided from 1878 to 1898. There is no legal difference between a property individually designated and a property designated as part of the district. In other words, the building is under the Historical Commission's jurisdiction.

[] Baron testified that "[i]n December of 2003, an application was filed by [Miguel] Santiago to renovate the building, to demolish the garage at the back of it, to put some additions, and to turn it into residential units, and … it was taken all the way through, and it was approved by the Historical Commission December [in] of 2003." [N.T., 4/18/2018, at 75.] Despite approval, no renovations were performed.

[] Baron further testified that the Historical Commission signed off on plans for a complete rehabilitation of the [P]roperty in 2007, but none was performed. In 2009 the Historical Commission signed off on a building permit application for wall shoring and partial reconstruction of the rear walls, but no work was performed. In 2010, the Historical Commission approved plans for a new roof, windows and walls. Again no work was

performed. In 2011, the Historical Commission approved an application for the demolition and reconstruction of the side wall. Again, no work was performed.

[] Baron testified that in 2012, a court ordered the removal of the rear L portion of the [P]roperty because it had become imminently dangerous, but conditional upon it being rebuilt within one year. The rear "L" portion was demolished but never rebuilt. In 2013, the Historical Commission approved the rebuilding of the cornice and gable wall. Neither have been done. In 2017, a court issued an [o]rder against Appellants "to make the building safe." The Historical Commission received an application to rebuild the rear wall near where the "L" had been removed. In July [of] 2017, the Commission approved the application, provided the vinyl siding was replaced with an appropriate cladding material. No work as performed. []

Finally, the court heard testimony from Thomas Rybakowski from the City of Philadelphia. [] Rybakowski testified that he had inspected the Property and issued violation notices on behalf of the Department of [L&I]. [] Rybakowski testified that in 2017, L&I declared the Property "unsafe" in accordance with the City Code and L&I protocols. Specifically, the building had deterioration on the front wall bricks which allowed water to penetrate the Property, and potentially compromise the structure of the bricks and wall. [] Rybakowski testified that a tree[3] was growing in the interior of the Property from the side of a load-bearing wall, near the top of the roof line.

[] Rybakowski testified that he had inspected the Property in 2016 and 2017. He found the Property to be unsafe, as per the designation from [L&I]. During those inspections, there was no safe way to access the second and third floors of the Property, other than by extension ladder. There were also no operational electrical, heating or plumbing systems; and there were open and exposed joists throughout the ceiling.

---

[3] It seems appropriate that the Property was returning to nature given that the petitioner and first witness was a Wolf, the second witness was a Fox, and the trial judge was another Fox.

[] Rybakowski testified that based on his inspections, the Property was not habitable. He also testified that the condition of the Property was a risk of fire. [] Rybakowski's primary concern was the continued deterioration of the front and side walls and the possibility of collapse. []

The [trial] court was concerned that the [Property] was not able to be salvaged and due to its condition should be demolished. The matter was continued for the building to be inspected by the City. The [trial] court also advised Appellants that at the next hearing, the court would consider [c]onditional [r]elief[4] as allowed under the Act and Appellants should be prepared to present evidence and testimony as to their intended plan for the Property. A hearing date was scheduled but one of the Appellants filed for [b]ankruptcy. All proceedings were stayed for approximately seven (7) months during the pendency of Appellants' [b]ankruptcy cases.[3]

_____

[3] Noris Santiago filed for [b]ankruptcy on April 30, 2018. On June 1, 2018, after two hearings, the [b]ankruptcy was dismissed. Miguel A. Santiago filed for [b]ankruptcy on July 11, 2018. On October 2, 2018, after three hearings[,] the [b]ankruptcy was dismissed.

On November 13, 2018, a second hearing took place before [the trial] court. [] Th[e trial] court heard additional testimony from [] Rybakowski, who testified that the classification of the Property remained "unsafe." [] Rybakowski also testified that there were no permits pulled on the Property other than an application for the "Make Safe Permit."

Although Appellants' attorney appeared at the November 13th hearing, his clients did not. Nor did they present a plan for [c]onditional [r]elief as allowed under the Act, nor evidence or testimony that they had the financial means to make renovations to the Property.

_____

[4] *See* 68 P.S. § 1105(f) (providing that the court may grant conditional relief upon a finding that "the owner represents that the conditions, violations or nuisance or emergency conditions will be abated in a reasonable period").

At the conclusion of testimony, and after argument, [the trial] court found the Property met the criteria set forth under Act 135 as a blighted and abandoned property and in need of remediation. The court further found that [Wolf's] recommended [c]onservator was qualified. The [trial court] appointed the Spring Garden [CDC] as [c]onservator of the Property under the Act. The court further denied Appellants' request for [c]onditional [r]elief.

Trial Court Opinion, 7/8/2019, at 2-7 (some citations and footnotes omitted).

Appellants timely filed a post-trial motion.[5] The trial court denied that motion on March 11, 2019. Appellants timely filed a notice of appeal.[6] Both Appellants and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellants challenge the trial court's decisions to appoint a conservator for the Property and to deny Appellants' request for conditional relief. We consider these issues mindful of the following.

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that

---

[5] Post-trial motions are necessary following Act 135 hearings. **See G&G Inv'rs, LLC v. Phillips Simmons Real Estate Holdings, LLC**, 183 A.3d 472, 477 (Pa. Super. 2018).

[6] On May 14, 2019, this Court entered an order requiring the trial court to enter judgment in this case. On May 21, 2019, the trial court entered judgment. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); **McEwing v. Lititz Mut. Ins. Co.**, 77 A.3d 639, 645 (Pa. Super. 2013).

affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the fact[-]finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*G & G Inv'rs*, 183 A.3d at 478 (citing *Agostinelli v. Edwards*, 98 A.3d 695, 704 (Pa. Super. 2014) (internal citations omitted)).

The Act sets forth the following requirements.

**(d) Conditions for conservatorship**.--If a petition is filed under [subsection 1104], the court may appoint a conservator if all of the following apply as of the date of filing:

(1) The building has not been legally occupied for at least the previous 12 months.

(2) The owner fails to present compelling evidence that he has actively marketed the property during the preceding 60-day period and made a good faith effort to sell the property at a price which reflects the circumstances and market conditions.

(3) The property is not subject to a pending foreclosure action by an individual or nongovernmental entity.

(4) The current owner fails to present sufficient evidence that he has acquired the property within the preceding six months. The evidence shall not include instances where the prior owner is a member of the immediate family of the current owner, unless the transfer of title results from the death of the prior owner, or where the current or prior owner is a corporation, partnership or other entity in which either owner or the immediate family of either owner has an interest in excess of 5%.

(5) The court finds at least three of the following:

(i) The building or physical structure is a public nuisance.

(ii) The building is in need of substantial rehabilitation and no rehabilitation has taken place during the previous 12 months.

(iii) The building is unfit for human habitation, occupancy or use.

(iv) The condition and vacancy of the building materially increase the risk of fire to the building and to adjacent properties.

(v) The building is subject to unauthorized entry leading to potential health and safety hazards and one of the following applies:

> (A) The owner has failed to take reasonable and necessary measures to secure the building.

> (B) The municipality has secured the building in order to prevent such hazards after the owner has failed to do so.

(vi) The property is an attractive nuisance to children, including, but not limited to, the presence of abandoned wells, shafts, basements, excavations and unsafe structures.

(vii) The presence of vermin or the accumulation of debris, uncut vegetation or physical deterioration of the structure or grounds has created potential health and safety hazards and the owner has failed to take reasonable and necessary measures to remove the hazards.

(viii) The dilapidated appearance or other condition of the building negatively affects the economic well-being of residents and businesses in close proximity to the building, including decreases in property value and loss of business, and the owner has failed to

take reasonable and necessary measures to remedy appearance or the condition.

(ix) The property is an attractive nuisance for illicit purposes, including prostitution, drug use and vagrancy.

68 P.S. § 1105(d).

Instantly, the trial court concluded that Wolf presented "ample evidence to grant the petition for appointment of a conservator." Trial Court Opinion, 7/8/2019, at 8. Specifically, the trial court concluded that the four requirements set forth in 68 P.S. § 1105(d)(1-4) were satisfied. *Id*. at 10. With respect to findings as to three of the nine elements of subsection 1105(d)(5), the trial court concluded that Wolf satisfied subsections (ii) (the Property is in need of substantial rehabilitation and no rehabilitation has taken place in at least 12 months), (iii) (the Property is unfit for human habitation), (vii) (physical deterioration has created potential health and safety hazards), and (viii) (the appearance has negatively affected the economic well-being of residents in close proximity). *Id*. at 10-12.

On appeal, Appellants set forth a vague argument contending that Wolf "did not establish the requirements under Act 135 for the [a]ppointment of a [c]onservator," and specifically reference the aforementioned statute. Appellants' Brief at 22. Appellants claim the trial court "erred in finding that all of the requirements under [sub]section 1105(d)(1-4) have been met," and that the "trial court erred in finding that three (3) of the requirements under [sub]section 1105(d)(5)(i-ix) were

met," but Appellants do not set forth any argument explaining which of the aforementioned elements were not satisfied.[7]

"The failure to develop an adequate argument in an appellate brief may [] result in waiver of the claim under Pa.R.A.P. 2119." ***Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument." ***Milby v. Pote***, 189 A.3d 1065, 1079 (Pa. Super. 2018). Based on the foregoing, it would be appropriate for this Court to conclude that Appellants were not entitled to relief due to their failing to present argument on appeal.

However, even if this issue were not waived, we would conclude that Appellants are not entitled to relief. At trial, the trial court heard testimony from numerous witnesses, as detailed *supra*, all of whom the trial court found credible. These witnesses testified regarding the condition of the property, the impact of the dilapidated property on the community, and the failure of Appellants to remediate the property and make it safe. ***See*** Trial Court Opinion, 7/8/2019, at 2-7 (summarizing the testimony and finding the testimony of Wolf, Fox, Schmitt, Baron, and Rybakowski credible). Thus, we

_____

[7] Appellants also fault the trial court for their own failure to call witnesses. ***See*** Appellant's Brief at 27-28. However, the record is clear that Appellants were permitted to call witnesses and offer evidence, but they chose not to do so when they elected not to appear for the second day of the hearing. ***See*** N.T., 11/13/2018, at 25 ("Your Honor, Mr. Santiago is not here, so I don't have any evidence to offer at this time."). Accordingly, we cannot fault the trial court for Appellants' own failure.

conclude that the trial court did not err or abuse its discretion in determining that Wolf satisfied the necessary elements of the aforementioned statute; therefore, Appellants are not entitled to relief.[8]

Finally, Appellants contend the trial court erred by failing to grant their request for conditional relief pursuant to 68 P.S. § 1105(f). **See** Appellants' Brief at 28-30. At trial, despite Appellants' failure to appear, counsel for Appellants argued that conditional relief should be granted. N.T., 11/13/2018, at 30-31.[9] Appellants contend that the trial "court did not permit [Appellants] to represent or even make a showing that they would remediate the conditions, violations, etc., within a reasonable period of time." Appellants' Brief at 29-30. However, as discussed *supra*, Appellants did not appear at the hearing or offer evidence on their behalf. Thus, Appellants' argument that the trial court did not permit them to present

_____

[8] Appellants also contend that the trial court erred in appointing a conservator. Specifically, they contend that appointment of a conservator was optional, not mandatory, and that there was no testimony that Spring Garden CDC was competent to be appointed conservator. Appellants' Brief at 27-28. At trial, Appellants did not argue that appointment of a conservator was optional or that the Spring Garden CDC was not an appropriate conservator. **See** N.T., 11/13/2018, at 34-35. Appellants raised this argument for the first time in their post-trial motion. **See** Post-Trial Motion, 11/28/2018, at ¶¶ 27-30. Our rules provide that any "error which could have been corrected in pre-trial proceedings or during trial … may not constitute a ground for post-trial relief." Pa.R.C.P. 227.1(b)(1)(Note). By not objecting at their first available opportunity to do so, Appellants have waived these issues.

[9] The notes of testimony state that this argument was made by counsel for Wolf. However, in reading the transcript as a whole, it is clear that counsel for Appellants set forth this argument.

evidence is belied by the record, and in fact, the trial court had no evidence before it with which it could conclude that Appellants intended to remediate the Property within a reasonable period. Accordingly, we conclude that Appellants are not entitled to relief on this issue.

Having determined that the trial court did not err or abuse its discretion in concluding that the Property satisfied the conditions for being an abandoned and blighted property in need of a conservator, and appointing the Spring Garden CDC as conservator, we affirm the judgment of the trial court.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/20