2024 PA Super 126

| | | |
|---|---|---|
| OCEANVIEW PROPERTY MANAGEMENT & RECOVERY SERVICES, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ADELAIDE C. BAKER, DECEASED, TOGETHER WITH KNOWN HEIRS AND UNKNOWN HEIRS, SUCCESSORS AND ASSIGNS AND CITY OF PITTSBURGH, PITTSBURGH PUBLIC SCHOOLS, COUNTY OF ALLEGHENY, PENNSYLVANIA DEPARTMENT OF REVENUE, BUREAU OF INDIVIDUAL TAXES, INHERITANCE TAX DIVISION | : | No. 292 WDA 2023 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| BLOOMFIELD DEVELOPMENT CORPORATION, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ADELAIDE C. BAKER, DECEASED, TOGETHER WITH KNOWN HEIRS AND UNKNOWN HEIRS, SUCCESSORS AND ASSIGNS, AND OCEAN VIEW PROPERTY MANAGEMENT RECOVERY SERVICES, LLC, CITY OF PITTSBURGH, PITTSBURGH PUBLIC SCHOOLS, COUNTY OF ALLEGHENY, PENNSYLVANIA DEPARTMENT OF REVENUE, BUREAU OF INDIVIDUAL TAXES, INHERITANCE TAX DIVISION. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

J-S34011-23

APPEAL OF: OCEANVIEW PROPERTY
MANAGEMENT & RECOVERY
SERVIES, LLC

Appeal from the Order Entered February 9, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): No. GD -21-000983

BEFORE: LAZARUS, J., STABILE, J., and MURRAY, J.

OPINION BY LAZARUS, J.:                              **FILED: JUNE 12, 2024**

Oceanview Property Management & Recovery Services, LLC
(Oceanview), appeals from the February 9, 2023 order[1] denying its post-trial
motion, seeking to have the trial court reverse its December 19, 2022 order
which, *inter alia*, appointed City of Bridges Community Land Trust (City of
Bridges) as conservator over the abandoned and blighted property in question
and declined to appoint Oceanview as conservator. Upon careful review, we
affirm.

Adelaide C. Baker, deceased, was the record owner of a house located
at 4701 Lorigan Street in Pittsburgh (the Property). On February 3, 2021,
Oceanview, a party in interest,[2] filed a petition for the appointment of a

_____

[1] Oceanview appeals under Pa.R.A.P. 311(a)(2), which "authorizes appeals
from interlocutory orders that either do or refuse to modify, confirm[,] or
dissolve attachments or similar matter[s] affecting the possession or control
of property." ***Triffin v. Interstate Printing Co.***, 515 A.2d 956, 957 (Pa.
Super. 1986). As stated in our per curiam order filed March 25, 2024, the
instant interlocutory appeal is properly before us pursuant to Rule 311(a)(2).
**See** Order, 3/25/24.

[2] A "party in interest" is defined as "a person or entity who has a direct and
immediate interest in a residential, commercial[,] or industrial building,"
*(Footnote Continued Next Page)*

- 2 -

conservator, wherein it averred that the Property's conditions qualify it for designation as "blighted and abandoned" pursuant to the Abandoned and Blighted Property Conservatorship Act (the Act), 68 P.S. §§ 1101-1110. Oceanview stated that the Property had not been legally occupied for at least twelve months prior to the filing of the petition and was believed to have been vacant since at least 2016. *See* Petition, 2/3/21, at ¶¶ 37-38. Oceanview also requested it be appointed as conservator to prevent waste and begin improvements to and rehabilitation of the Property. *See id.* at ¶¶ 53-56.

On April 14, 2021, Bloomfield Development Corporation (Bloomfield), another party in interest, filed a petition to intervene. On June 15, 2021, the trial court granted Bloomfield's petition. Bloomfield subsequently filed a separate petition pursuant to the Act, proposing that City of Bridges, a nonprofit corporation, be appointed as conservator. On May 5, 2022, following Oceanview's motion and Bloomfield's consent, the trial court consolidated the two actions for the purpose of appointing a conservator for the Property.

On August 29-30, 2022, the Honorable W. Terrence O'Brien presided over a rule to show cause hearing. On September 17, 2022, the trial court entered an order directing the parties to file proposed findings of fact and conclusions of law, briefs in support of their respective positions, and proposed

---

including the following: (1) the owner; (2) a lienholder or secured creditor of the owner; (3) a resident or business owner within 2,000 feet of the building; (4) certain nonprofit corporations; (5) a municipality or school district in which the building is located; and (6) a land bank, as defined under 68 Pa.C.S.A. § 2103. *See* 68 P.S. § 1103.

orders. The order also allowed for the filing of responsive briefs. On December 19, 2022, the trial court, following appropriate filings by the respective parties, entered an order which, *inter alia*, appointed City of Bridges as conservator for the Property.[3] The court specifically made a finding that:

> [T]he Act instructs the [c]ourt to give preference to a nonprofit organization over an individual when making an appointment of conservator. City of Bridges is a nonprofit corporation with experience rehabilitating abandoned and blighted properties in Pittsburgh. Moreover, its preliminary plan of abatement was more developed than Oceanview's plan and has the added benefit of creating and preserving affordable housing, a goal of this [c]ourt when adjudicating proceedings under the Act.

Order, 12/19/22, at ¶ 3.

Oceanview timely filed a post-trial motion alleging that the trial court erred as a matter of law in finding that: (1) the Act gives preference to nonprofit corporations over an individual; (2) City of Bridges could serve as conservator, in violation of section 1109 of the Act; and (3) affordable housing was a goal of the court, in violation of section 1102 of the Act. **See generally** Post-Trial Motion, 12/28/22. On February 9, 2023, the trial court denied the motion.[4]

_____

[3] We note that no nongovernmental lienholder was identified. All lienholders were identified as governmental entities. **See** Brief in Support of Bloomfield's Petition for Appointment of Conservator, 10/31/22, at 17; **see also** 68 P.S. § 1105(e).

[4] Oceanview filed a timely post-trial motion challenging the trial court's appointment of City of Bridges as conservator. **See, e.g.**, **Scioli Turco, Inc. v. Prioleau**, 207 A.3d 346, 349 n.2 (Pa. Super. 2019) (Court requiring post-trial motion be filed to preserve appellate issues following hearing under the

*(Footnote Continued Next Page)*

- 4 -

On March 7, 2023, Oceanview filed a timely notice of appeal.[5] On March 20, 2023, the trial court stated it would not file a Pa.R.A.P. 1925(a) opinion because the February 9, 2023 order adequately addressed Oceanview's claims. As such, Oceanview did not file a Rule 1925(b) concise statement of

---

Act). The trial court then entered the February 9, 2023 order denying Oceanview's post-trial motion. Oceanview timely filed its notice of appeal, pursuant to Pa.R.A.P. 311(a)(2), from that order. **See** Pa.R.A.P. 311(a)(2) (permitting interlocutory appeal as of right from "order confirming, modifying, dissolving, or refusing to confirm, modify[,] or dissolve an attachment custodianship, receivership, or similar matter affecting the possession of property or control of property"). Because post-trial motions were required after entry of the December 19, 2022 order, and because the February 9, 2023 order denying the post-trial motion refused to modify the appointment of City of Bridges as conservator, Oceanview properly brings this appeal pursuant to Rule 311(a)(2).

[5] The limited case law regarding the Act presents conflicting approaches to whether an appeal properly lies from the entry of an interlocutory order or if entry of final judgment is required. **See Wolf v. Santiago**, 230 A.3d 394, at 399 n.6 (Pa. Super. 2020) (requiring entry of judgment after denial of post-trial motion in proceeding under the Act; addressing merits of appeal because notice of appeal filed after announcement of determination but before entry of appealable order shall be treated as filed after such entry); **c.f. Phila. Cmty. Dev. Coal., Inc. v. Phila. Redevelopment Auth.**, 298 A.3d 172, 176 n.9 (Pa. Cmwlth. 2023) (appeals from Act proceedings fall within Rule 311(a)(2)). **See also Commonwealth v. Bowers**, 185 A.3d 358, 362 n.4 (Pa. Super. 2018) (Commonwealth Court decisions are not binding on this Court but may be used as persuasive authority). **See** 68 P.S. § 1110 (court may order termination of conservatorship if conditions leading to finding of blight are abated or corrected and "purposes of the conservatorship have been fulfilled").

As noted **supra**, Oceanview takes issue with the court's refusal to modify the conservatorship it established in the December 19, 2022 order. As such, an interlocutory appeal may be taken from the trial court's February 9, 2023 order. **See** Pa.R.A.P. 311(a)(2).

errors complained of on appeal.[6] Oceanview challenges the trial court's decision to appoint City of Bridges as conservator, raising the following claims on appeal:

[1.] Whether [the trial court erred as a matter of law and/or abused its discretion when it held that the Act] mandates that the court give a non[]profit corporation priority over a competent entity.

[2.] Whether the trial court erred as a matter of law and/or abused its discretion when it appointed City of Bridges[] as conservator, in violation of [s]ection 1109 of the [Act,] which mandates distribution of proceeds from the sale of a property once remediated/rehabilitated.

[3.] Whether the trial court committed an error of law and/or abused its discretion in holding that the [Act's] intended purpose was to create and preserve affordable housing[,] in violation of the legislative purpose of the Act, pursuant to [s]ection 1102.

Appellant's Brief, at 2.

Our standard and scope of review in non-jury cases is well-established:

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence[,] we will not substitute our judgment for that of the fact-finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

---

[6] The trial court did not order Oceanview to file a Rule 1925(b) statement.

*G & G Inv'rs, LLC v. Phillips Simmons Real Estate Holdings, LLC*, 183

A.3d 472, 478 (Pa. Super. 2018) (citations omitted).

The Act provides, in relevant part, as follows:

**(e) APPOINTMENT**.--

**(1)** If the court determines after a hearing that the property has met the conditions of subsection (d), the court may appoint a conservator, certify the schedule of encumbrances[,] and grant such other relief as may be just and appropriate. The certification shall be binding with respect to all mortgages, liens[,] and encumbrances, including municipal liens, arising or attaching to the property prior to the date of the petition.

**(2)** The court shall give first consideration for appointment as conservator to the most senior nongovernmental lienholder on the property.

**(3)** In the event the senior lienholder is found to be not competent or declines the appointment, the court may appoint a nonprofit corporation or other competent entity. If the property is located in a city of the first class, the nonprofit corporation or entity must be located in the city and must have participated in a project within a five-mile radius of the location of the property. In appointing a conservator, the court shall:

(i) consider any recommendations contained in the petition or otherwise presented by a party in interest; and

(ii) give preference to the appointment of a nonprofit corporation or governmental unit over an individual.

68 P.S. § 1105(e).

**§ 1109. Sale of property**

**(a) SALE BY OWNER OR LIENHOLDER**.-- If a property subject to conservatorship is sold by the owner or foreclosed upon by a lienholder or if any interest therein is transferred, such sale, foreclosure[,] or transfer shall be subject to the conservatorship.

**(b) SALE BY CONSERVATOR**.-- Upon application of the conservator, the court may order the sale of the property if the court finds that:

> **(1)** Notice and an opportunity to provide comment to the court was given to each record owner of the property and each lienholder.

> **(2)** The conservator has been in control of the building for more than three months and the owner has not successfully petitioned to terminate the conservatorship under section 10.

> **(3)** The terms and conditions of the sale are acceptable to the court, and the buyer has a reasonable likelihood of maintaining the property.

**(c) SALE FREE AND CLEAR**.--

> **(1)** The court may authorize the conservator to sell the building free and clear of all liens, claims[,] and encumbrances, provided that the proceeds of the sale are distributed pursuant to subsection (d) at settlement.

> **(2)** In the event that the proceeds of the sale are insufficient to pay all existing liens, claims[,] and encumbrances, the proceeds shall be distributed according to the priorities set forth in subsection (d) and all unpaid liens, claims[,] or encumbrances which have not been assumed under section 8(d) shall be extinguished.

**(d) DISTRIBUTION**.-- The proceeds of the sale shall be applied in accordance with the following priorities to:

> **(1)** All court costs.

> **(2)** Liens of the Commonwealth, liens for unpaid property taxes[,] and properly recorded municipal liens.

**(3)** Costs and expenses of sale.

**(4)** Principal and interest on any borrowing or incurrence of indebtedness granted priority over existing liens and security interest under section 8(b).

**(4.1)** Costs incurred by the petitioner in preparing and filing the petition in accordance with the requirements of section 4.

**(5)** Costs of rehabilitation and any fees and expenses incurred by the conservator in connection with the sale or the safeguarding of the property for which the lien authorized under section (5)(g) was filed.

**(6)** Valid liens and security interests in accordance with their priority.

**(7)** Any unpaid obligations of the conservator.

**(8)** (Deleted by amendment).

**(9)** The owner.

**(e) OWNER'S PROCEEDS AS UNCLAIMED PROPERTY.--** In the event the owner cannot be located, any proceeds from the sale which belong to the owner shall be presumed to be abandoned and unclaimed and shall be subject to the custody and control of the Commonwealth pursuant to Article XIII.1 of the act of April 9, 1929 (P.L. 343, No. 176), known as The Fiscal Code.

68 P.S. § 1109.

## § 1102. Legislative findings and purpose

The General Assembly finds and declares that:

**(1)** Pennsylvania's older communities are important to the Commonwealth's economic health by providing a focal point for businesses and services and to this Commonwealth's quality of life with its rich history and diverse communities. However, many older communities suffer from blighted properties that have been abandoned by their owners.

**(2)** Many citizens of this Commonwealth are adversely affected by abandoned and blighted residential, commercial[,] and industrial properties,

- 9 -

including those citizens who live in proximity to such substandard buildings, as well as those who own property in the vicinity of such buildings.

**(3)** Substandard, deteriorating[,] and abandoned residential, commercial[,] and industrial structures are a public safety threat and nuisance and their blighting effect diminishes property values in the communities in which these properties are located.

**(4)** If these buildings are not rehabilitated, they are likely to remain abandoned and further deteriorate, resulting in increased costs to the Commonwealth, municipality[,] and taxpayers to secure and ultimately demolish them.

**(5)** Providing a mechanism to transform abandoned and blighted buildings into productive reuse is an opportunity for communities to modernize, revitalize[,] and grow, and to improve the quality of life for neighbors who are already there.

**(6)** If the owner of a residential, commercial[,] or industrial building fails to maintain the property in accordance with applicable municipal codes or standards of public welfare or safety, it is in the best interest of the Commonwealth, the municipality[,] and the community for the court, pursuant to the provisions of this act, to appoint a conservator to make the necessary improvements before the building deteriorates further and necessitates demolition, resulting in the removal of the building from the housing supply or prohibiting future productive economic use.

68 P.S. § 1102.

Instantly, the trial court found that City of Bridges was a nonprofit "with experience rehabilitating abandoned and blighted properties in Pittsburgh" and that its "preliminary plan of abatement was more developed than Oceanview's plan." Order, 12/19/22, at ¶ 3. The court further stated that it gives preference to a nonprofit organization over an **individual** when

appointing a conservator under section 1105(e)(3)(ii) of the Act. **See id.** Moreover, the court highlighted the "added benefit of creating and preserving affordable housing" in the community. **Id.**

Oceanview argues that the trial court erred when it appointed City of Bridges because it misconstrued the meaning of section 1105(e)(3), and that the plain language of the section dictates that the court "may appoint a nonprofit corporation or other competent entity." Appellant's Brief, at 8 (quoting 68 P.S. § 1105(e)). Oceanview posits that a court's obligation when ascertaining the meaning of a statute is to give words their "plain and ordinary meaning," to consider words "in their grammatical context," and to "determine the intent of the legislature." **Id.** at 11.

Oceanview provides no evidence that the court misconstrued or misapplied the law. To the contrary, Oceanview highlights that the trial court stated at the rule to show cause hearing that the Act "does not require" only nonprofits to be appointed as conservator. **Id.** at 8; **see also** N.T. Rule to Show Cause Hearing, 8/29/22-8/30/22, at 151. In addition, in its order appointing City of Bridges, the trial court was clear that the preference for nonprofit corporations is over individuals, just as the statute states. **See** Order, 12/19/22, at ¶ 3; **see also** 68 P.S. § 1105(e)(3)(ii). Further, in denying Oceanview's post-trial motion, the trial court reiterated its understanding of its obligation to consider any recommendations contained by a party in interest and give preference to the appointment of a nonprofit corporation over an individual. **See** Post-Trial Motion Order, 2/9/23

- 11 -

(referencing last sentence of section 1105(e)(3)). The trial court did not err in its recitation or application of the statute, nor has Oceanview provided any argument or evidence to suggest that the trial court failed to appoint a competent entity. As such, Oceanview is not entitled to relief with respect to this issue. ***See G & G Inv'rs, LLC***, ***supra***.

Next, Oceanview argues that the court erred by appointing City of Bridges as conservator because its plan fails to maximize the value of the Property. ***See*** Appellant's Brief, at 15-16. Specifically, Oceanview points to the statements by City of Bridges that it would retain ownership of the land and sell the home on the Property, and that it plans only to rehabilitate the exterior of the Property before petitioning the court to sell it. ***See id.*** at 14-15. Oceanview argues that this plan violates section 1109(d) of the Act, which sets out the requirement for the distribution of proceeds following a court-approved sale, by failing to maximize its potential selling price. ***Id.*** at 15.

Oceanview makes the bald statement that, "[i]n general, when a property is remediated and rehabilitated, the value of the property can then be maximized, through a court sale." ***Id.*** Oceanview, however, provides no factual basis, no statute, and no case law to support this assertion. Oceanview asks this Court to consider the plain language of the words used to interpret section 1109(d) of the Act. A review of the section, reproduced in full, ***supra***, makes no mention of the value of the Property. Rather, section 1109 simply explains the process by which a sale should be made and the manner in which the proceeds of the sale shall be distributed. ***See*** 68 P.S. § 1109. The trial

court also recognized this fact, stating that the Act "does not require a conservator to maximize the value of the subject property." Post-Trial Motion Order, 2/9/23. Furthermore, the trial court's order appointing City of Bridges makes no mention of the sale of the Property, but it does require a future hearing on a final plan of abatement and that City of Bridges provide annual status reports to the court in accordance with the Act. *See* Order, 12/19/22, at ¶¶ 5-6. Thus, we conclude that the trial court did not err or abuse its discretion by appointing City of Bridges pursuant to section 1109(d) of the Act. Accordingly, Oceanview is not entitled to relief with respect to this claim.

Finally, Oceanview argues that the trial court erred or abused its discretion by holding that the Act's purpose is to create and preserve affordable housing. Oceanview points to section 1102, which defines the purpose of the Act and does not mention affordable housing. *See* Appellant's Brief, at 18-19. Oceanview further contends that the trial court's statement that appointing City of Bridges "has the added benefit of creating and preserving affordable housing" goes beyond the requirements of the Act and is therefore improper and an abuse of the court's discretion. *Id.* at 19-20 (citing *In re a Conservatorship Proceeding in Rem by Germantown Conservancy, Inc.*, 995 A.2d 451 (Pa. Cmwlth. 2010)). However, Oceanview fails to set forth any argument or explanation to support its position that the trial court was attempting to add an affordable housing "requirement" to the purpose of the Act, or the manner in which the court otherwise erred or abused its discretion.

- 13 -

"The failure to develop an adequate argument in an appellate brief may [] result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (citation and quotation marks omitted). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument." *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018); *see also Wolf*, 230 A.3d at 401. As such, we conclude that Oceanview has waived this claim on appeal.

However, even if this issue were not waived, we would conclude that Oceanview is not entitled to relief. The trial court heard two days of testimony from witnesses, heard argument from both Oceanview and Bloomfield, and ordered the parties to file proposed findings of fact and conclusions of law before making any determination regarding which entity would serve as conservator for the Property. *See* Order, 9/19/22.

When the trial court issued its order appointing City of Bridges as conservator of the Property, the court explained its reasons for doing so, including that it is "a nonprofit corporation with experience rehabilitating abandoned and blighted properties in Pittsburgh. Moreover, its preliminary plan of abatement was more developed than Oceanview's plan." Order, 12/19/22, at ¶ 3. The court further stated that City of Bridges' plan had "**the added benefit of creating and preserving affordable housing, a goal of this [c]ourt** when adjudicating proceedings under the Act." *Id.* (emphasis added).

At no point did the trial court state that the creation of affordable housing was a newly imposed requirement, let alone a stated purpose of the Act, but rather that it was a "factor the court may consider in choosing between competing proposed conservators." Post-Trial Motion Order, 2/9/23; *see also* Order, 12/19/22, at ¶ 3 (City of Bridges' "plan of abatement was more developed" and had "the added benefit of creating and preserving affordable housing[.]").  As such, we conclude that the trial court did not err or abuse its discretion in considering, as one factor in its decision, the fact that City of Bridges' plan included affordable housing.  Oceanview is not entitled to relief on this issue.

Order affirmed.

Murray, J., joins the Opinion.

Stabile, J., Concurs in the Result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/12/2024